FARMERS MUTUAL INS. CO. *v.* DENNISTON.

5-3180                                              376 S. W. 2d 252

Opinion delivered March 9, 1964.

*Parker Parker,* for appellant.

*Dobbs, Pryor and Dobbs, Batchelor & Batchelor,* for appellee.

CARLETON HARRIS, Chief Justice. In July, 1959, W. E. Denniston and wife, appellees herein, hereinafter referred to in the singular as appellee Denniston, purchased from Charles Fite, d/b/a C. H. & F. Company, a house trailer on an installment contract. At that time Fite took out automobile insurance (including fire insurance) with

the Phoenix Insurance Company, hereinafter called Phoenix, one of the appellees herein, the policy being issued to Denniston. The agent for Phoenix, Francis Hiller, did not deal directly with Denniston, except to advise him of the collision features of the policy that had been issued. The fire insurance coverage was in the amount of $3,500. Mr. Denniston moved the trailer to the school grounds at Oark, where he was serving as superintendent of the school, and the trailer was placed upon concrete blocks, and connected to utilities. In June, 1960, Denniston signed an application for insurance with the Farmers Union Mutual Insurance Company, hereinafter called Farmers, advising the soliciting agent for the company, Lowell Whittington, that the trailer had a value of $6,000. Denniston applied for $4,000 insurance on the trailer, and $1,000 on the contents thereof. On June 15, Farmers issued its policy, providing, *inter alia,*

"This entire policy shall be void if whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

* * *

"This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved whether collectible or not."

The Phoenix policy contained a similar provision with reference to proration.

On January 17, 1961, the trailer and its contents were completely destroyed by fire. Both insurance companies were advised of the loss. Phoenix, at all times, has been ready to pay its prorata share of the loss. However, a dispute arose between Denniston and Farmers relating to the filing of a proof of loss, and, also, whether Farmers was liable for the entire amount of coverage it had issued under the Valued Policy Law. After cor-

respondence, mainly between counsel, for some period of time, Farmers, on May 18, 1961, instituted suit seeking a declaratory judgment to the effect that the policy was void, and should be cancelled as of June 10, 1960. The complaint alleged fraud in the procurement of the policy; that the Dennistons had refused to execute a sworn proof of loss as provided in the policy; that the Dennistons were contending that the trailer constituted real estate, and that the policy should be cancelled as of June 10, 1960, because of fraud. Farmers prayed that the court enter its declaratory judgment finding that it was not liable on the policy, and, in the alternative, that the trailer be declared personal property, and that Farmers be directed to pay only its prorata share of the loss with Phoenix. Fite filed an answer, setting up that he was the owner of the trailer, that it had been destroyed by fire, and that he was entitled to $2,798.88. Fite then filed a cross-complaint against Phoenix, seeking that amount.[1]

The Dennistons answered, denying all material allegations, and filed their cross-complaint against Farmers, seeking judgment in the full amount of the policy; seeking judgment against Phoenix in the amount of $3,500, and asking for statutory penalty and reasonable attorneys' fees against both companies. After the filing of other motions, the case proceeded to trial. At the conclusion thereof, the court entered its findings wherein it determined that the Dennistons were not guilty of fraud; that the completion of proof of loss forms was not required under the facts in the case; and that the Valued Policy Law was not applicable since the trailer was personal property. The court rendered judgment for the Dennistons in the amount of $4,546.67, plus 12% penalty, and an attorneys' fee of $450.00. Of this amount, it was held that Phoenix should pay $1,633.34, $162.00 of the attorneys' fee, plus 12% penalty, or a total of $1,991.34. Farmers was found liable to the extent of $1,913.33 as to the trailer, plus $1,000 on household goods, $288.00 of the attorneys' fee, and 12% penalty, or a total

---

[1] From the record, Phoenix has apparently paid the amount of the lien held by Fite.

of $3,550.93.[2] Judgment was entered in accordance with these findings, and from such judgment Farmers brings this appeal. The Dennistons have cross-appealed, contending that the court erred in declaring the trailer to be personal property, and asserting that they are entitled to the full coverage from Farmers. Phoenix cross-appeals as to the finding of the court that it is liable for penalty and attorneys' fees. For reversal, appellant relies upon several points, which we proceed to discuss.

It is asserted that the policy is void because of fraudulent misrepresentations by Denniston in his application for insurance. This contention is based on the assertion that Denniston gave a fraudulent answer as to the value of the property, did not reveal the fact that another insurance policy was in force, and fraudulently withheld other pertinent information. As to the first, Denniston testified that, upon purchasing the trailer, he was advised that it had an original value of $6,000, but had been damaged in a fire; that, however, the seller stated to him that it was subsequently restored to equally good condition, even though sold to this appellee for only $3,500. Under Denniston's testimony, he had a reasonable basis for believing the value given, and the soliciting agent for the company who viewed the property testified that, "I relied on Mr. Denniston. As far as I could tell, the home was worth what he said." As to having insurance with Phoenix, there was evidence that Denniston did not wilfully conceal that fact. In the first place, this policy was taken out by Fite with the Brown-Hiller Insurance Agency, and Hiller testified that he had no contact with Denniston except to advise by letter when the temporary collision coverage would expire. In the next place, no fraudulent answer was given on the application. Fourteen questions are listed in the application form, including the question, "Is there other insurance on any of this property? If so, how much and in what company?" This question, along with the other thirteen, is not an-

[2] Phoenix, having already paid the lien in full, and such amount exceeding its total liability, was given judgment against Farmers in the amount of $807.54. This amount is included in the total judgment against Farmers of $3,550.93.

swered at all. Complaint is also made that the company was not informed that the property was encumbered. This is question No. 7 on the form, and is not answered. In fact, *no* questions relative to the property are answered at all, and the application form contains nothing more than the identification of the insured item (trailer and contents), cash value, amount of insurance (applied for), the rate and premium charged, and the signatures of the assured and the agent. The company issued a policy on this application, so it would appear that appellant did not consider the answers important; otherwise, it would have returned the application with directions that it be completed. As we stated in *Mutual Reserve Fund Life Association* v. *Farmer,* 65 Ark. 581, 47 S. W. 850:

"The applicant made no answer to the question marked "D" but left the space for answers as to the name and address of the physician referred to blank. If that was thought to be important, the application for the policy should not have been accepted until the answers were made by the applicant. Certainly, we would not say, under the circumstances, by this failure to fill out the blank for the answer, the applicant was suppressing the truth, especially in view of his previous answers, indicating a want of knowledge on the subject."

Here, too, not only does it appear that the company considered the failure to answer the questions as unimportant, but a lack of knowledge on the part of Denniston is certainly indicated by the fact that no answers were given to any question. Clearly, there was substantial evidence to support the finding of the court that no fraud had been committed.

It is asserted that Denniston refused to furnish appellant proof of loss, and the contract is therefore void. Under the provisions of the policy, an executed proof of loss is required within 60 days after the loss occurs, unless the time be extended in writing by the company. Proof on the part of appellee Denniston was that on January 17, 1961, the date of the fire, counsel for this

appellee wrote a letter to appellant company, in which he advised of the fire, that the property loss was total, and requested proof of loss forms. Thereafter Carrol D. McCarty, adjuster for appellant company, went to Fort Smith, and learned of the existence of the Phoenix policy and of the encumbrance to Fite. McCarty conferred with John Bonds, representing Phoenix, and subsequently advised Denniston that he (McCarty) would be in Oark on a certain day. McCarty failed to appear on that occasion, and some days later returned, but was unable to locate Denniston. According to the adjuster, he left a letter and a proof of loss form with one of appellee's neighbors, requesting that same be turned over to Denniston. This apparently took place about two weeks after the fire. On February 3, Denniston directed a letter to appellant, stating:

"I am sorry you missed seeing me today, for I do not quite understand what you mean by personal property, as the loss according to my way of thinking would be almost countless. We lost a 13-year accumulation of property, from needles to a TV. The following list may or not be what you mean:"

The letter then listed numerous items of personal property together with the valuation that he placed upon them.

It appears from the record that no further action was taken by the company directly with Denniston for some period of time, and there is no evidence that counsel for Denniston ever received any proof of loss forms as requested in his letter of January 17. As shown by the evidence, counsel for appellant directed a letter to Denniston on April 5, advising the latter that the complete file had been turned over to him, and that the file did not contain a proof of loss as required by the policy. A proof of loss was enclosed with the letter, and it appears that Denniston received the proof of loss form. The record is somewhat confusing, containing, as it does, numerous letters between counsel. However, it is undisputed that counsel for Denniston requested proof of loss

forms on the day of the loss, and there is no evidence that these forms were furnished. Denniston denies that any proof of loss form was given to him by any neighbor, as stated by McCarty.[3] It likewise seems undisputed that the company took no further steps to place in the hands of Denniston or his attorney any proof of loss forms until April 5, which was, of course, more than sixty days after the loss had occurred. Counsel for appellant offered to extend the time, but we are of the opinion that Farmers, by its conduct, waived the requirement for proof of loss. For one thing, the company should have sent the forms to Denniston's counsel, as requested. For another, if the list (of personal property loss) contained in Denniston's letter was not satisfactory, the company should have immediately advised him of that fact rather than waiting until April 5. Finally, under date of March 13, Richard Hopkins, claim director for Farmers Union Mutual Insurance Company, directed a letter to Denniston's attorney, as follows:

"Dear Mr. Batchelor

Relative to your file No. 3411407364, W. E. Denniston, our letter of February 6, 1961, written by Mr. C. D. McCarty stated that our Company was ready to settle on the basis discussed by Mr. Bonds and Mr. McCarty. Since that date we have had no communication from you.

We would appreciate knowing if an attempt has been made by you to settle on this basis with the insured. We would like to dispose of the claim as soon as possible, and will be awaiting your reply."

This letter is certainly evidence that Farmers had already investigated the claim, had determined upon a

---

[3] Appellant contends that counsel for appellee, by letter of May 2, 1961, admitted that Denniston had received a proof of loss form in February. The date that such proof of loss was received is not made clear by the letter, i.e., whether February or April, and, in fact, it is not entirely clear that counsel was referring to an actual company proof of loss form, since the letter states that Denniston had completed the proof of loss. Unquestionably, the only "proof of loss" sent to the company was the list of personal property contained in the letter of February. 3.

figure that it would pay, and was accordingly not insisting upon the proof of loss.

In *National Union Fire Ins. Co.* v. *Wright,* 163 Ark. 42, 257 S. W. 753, this court said:

"If an authorized agent, within the time specified for making proof of loss under the policy, enters into negotiations for the adjustment of the loss, or otherwise treats this requirement of the policy as having been complied with, or as waived, then the company cannot thereafter defend upon the ground that a proof of loss was not furnished."

See also *American Insurance Company* v. *Rector,* 172 Ark. 767, 290 S. W. 367. In *Conley* v. *Fidelity-Phenix Fire Ins. Co. of New York,* 102 F. Supp. 474, (U.S.D., W.D. Ark., Ft. Smith Division), it was said:

"However, a failure to give notice or furnish proof of loss is waived by any conduct on the part of the insurer or its authorized agent inconsistent with the intention to enforce a strict compliance with the insurance contract in such regard. A waiver of formal proof of loss may be inferred under a variety of circumstances, such as subjecting the insured to an examination under oath as to the facts of the fire, or by retaining without objection a claim made within the 60 day period, or by charging the insured with the crime of arson. Any conduct on the part of the company or its representatives prior to the expiration of the sixty day period which lulls the insured into a feeling of security in that regard is sufficient to establish a waiver."

It is asserted that the court erred in establishing the value of the trailer at $3,800.00, less depreciation. The court's finding was based upon the fact that the trailer had been purchased for $3,500.00, and Denniston had added a porch, and various utility connections, which were found to add $300.00 to the value. This point only relates to $300.00, and we are unable to say that there was no substantial evidence to support the finding.

Except for one further argument, concerning attorneys' fees, the remaining points relate to the cross-appeals.

The Dennistons contend that the court erred in holding that the house trailer was, within the meaning of the statute,[4] personal property. We do not agree. The proof reflected that the trailer was placed on school property by the consent of the school board. It was set on concrete blocks, though not cemented to them, and the wheels were still on the trailer, although lifted from the ground and the air removed from the tires. Utilities were connected to the trailer. In *Kearbey* v. *Douglas,* 215 Ark. 523, 221 S. W. 2d 426, we said:

"The basic principles observed by the courts in determining whether personal property becomes a fixture by annexation to the land are discussed in *Choate* v. *Kimball,* 56 Ark. 55, 19 S. W. 108, and Tiffany on Real Property (3d Ed., §§ 606-626. We have held that the intention of the person making the annexation is a consideration of primary importance, *Morgan Utilities, Inc.* v. *Kansas City Life Ins. Co.,* 183 Ark. 492, 37 S. W. 2d 90; but Tiffany rightly concludes that the courts apply an objective test and arrive at the annexer's intention by looking to his outward acts rather than to the inner workings of his mind. Tiffany, *supra,* § 608. It thus becomes necessary to examine the manifestations of intent that have been regarded as controlling."

A compelling reason for finding that the trailer did not lose its identity as personal property is the fact that it was placed on land belonging to the school district, rather than on land owned by appellee. Denniston did not even have a lease on the property, and it is apparent that he did not contemplate leaving it on school property thenceforth. In fact, his intention is best shown by his own testimony, wherein he stated,

---

[4] Ark. Stat. Ann. § 66-3901 (1963 Supp.) called "Valued Policy Law."

"Naturally I would take it away if I did not sell it or would not want to leave it there unless I would sell it."

In his discovery deposition, taken prior to the trial, Denniston stated that he intended to leave the trailer on the school ground "as long as I was there working." When asked if he intended to take it away when he left, appellant replied, "Well, naturally, I guess I would." It is evident that there was never any intention that the trailer should remain on the premises, except for a limited period of time, and the testimony referred to constituted substantial evidence to support the ruling of the trial court. Having reached the conclusion that the trailer was personal property, it becomes unnecessary to consider the Valued Policy Law as the statutory provisions do not apply to personal property.

We agree with appellant, and with Phoenix, that the court erred in holding that Denniston was entitled to recover the statutory penalty, and attorneys' fees, from these companies. As to Farmers, the complaint sought $5,000.00, and only $2,913.33 (less penalty) was recovered in the litigation. As to Phoenix, the complaint sought $3,500.00, but only $1,633.34 was recovered. We have held many times that a recovery of the amount sued for is a prerequisite to recovering penalty and attorneys' fees. *Southern Farm Bureau Casualty Ins. Co.* v. *Brigance,* 234 Ark. 172, 351 S. W. 2d 417; *Kansas City Fire & Marine Ins. Co.* v. *Baker,* 229 Ark. 130, 313 S. W. 2d 846, and cases cited therein.

In accordance with the views expressed herein, the judgment is modified to the extent that appellant and Phoenix are not liable for penalty and attorneys' fees. With this modification, the judgment, in all other respects, is affirmed.