ARKANSAS DEPARTMENT OF HUMAN SERVICES,
Division of Economic and Medical Services
*v.* Michelle KISTLER

94-1409                                        898 S.W.2d 32

Supreme Court of Arkansas
Opinion delivered May 15, 1995

502

*Charles Mackey*, for appellant.

*Davis Duty*, for appellee.

ANDREE LAYTON ROAF, Justice. Appellant, Arkansas Department of Human Services (DHS), Division of Economic and Medical Services, terminated appellee Michelle Kistler's participation in the Developmental Disabilities Services Alternative Community Services Waiver Program. Appellee Kistler filed a petition for judicial review pursuant to Ark. Code Ann. § 25-12-212 (Repl. 1992), and the circuit court reversed the appellant's decision. We affirm the circuit court's reversal of the appellant's decision.

Appellee Michelle Kistler, born January 8, 1974, has congenital spina bifida and scoliosis, meningomyelocele paraplegia, hydrocephalus VP shunt, and a neurogenic bowel and bladder. She has a Wechsler Adult Intelligence Scale - Revised (WAIS-R) performance IQ of 68, WAIS-R verbal IQ of 80, WAIS-R full-scale IQ of 73, and a Vineland Adaptive Behavior Score of 109 plus or minus 8. Further, she receives Supplemental Security Income and is Medicaid qualified. She currently lives with, and is cared for by, her mother, Mrs. Jennifer Kistler. Because she is paraplegic, the appellee is confined to a wheelchair, needs assistance

to get in and out of her wheelchair, needs assistance with bathing, and she cannot dress her lower extremities.

The Omnibus Budget Reconciliation Act of 1981 (Public Law 97-35, Section 2176) allows states the option of providing home and community based services, as an alternative to institutionalization, to a limited number of individuals with a developmental disability who would otherwise require an ICF/MR (Intermediate Care Facility for the Mentally Retarded) Level of Care. In accordance with the act, the appellant instituted the Developmental Disability Services Alternative Community Services Waiver Program (Waiver Program) and adopted eligibility requirements for applicants. *See* Medical Services Policy 2075.1.

The appellee was admitted to participate in the Waiver Program on September 18, 1991, with an effective date of August 1, 1991. The appellee was notified on August 19, 1992, that she was no longer eligible to participate in the program and her benefits would be terminated August 29, 1992. The appellee requested a hearing, which was held on November 5, 1992, before Hearing Officer Diana Little of the Appeals and Hearings Section of DHS. On October 18, 1993, the hearing officer issued a decision upholding the termination of appellee's participation in the Waiver Program. Subsequently, the appellee filed a petition for judicial review in the Circuit Court of Sebastian County.

The Department of Human Services appeals from the circuit court's order reversing the agency decision. Appellant raises five points on appeal: (1) the trial court erred in awarding attorney's fees and costs; (2) the trial court erred in the standard of review it used; (3) the trial court erred in substituting its judgment for the judgment of the administrative hearing officer; (4) the trial court erred in reversing the administrative decision upon finding a violation of appellee's due process rights; and (5) the trial court erred in determining that appellant failed to file the entire administrative record and reversing the administrative decision on that ground.

## I. Review of Agency Decision.

The appellant asserts the trial court erred in applying a preponderance of the evidence standard and in substituting its judgment for that of the administrative hearing officer. In reversing the termination of benefits, the circuit court stated:

While it is not entirely clear whether or not the Defendant has formally adopted a specific criteria for entitlement to Alternative Medicaid Waiver Services by reason of mental retardation, the preponderance of the evidence reflects that if indeed any such criteria was established, either by formal action or by custom and usage, it was substantially identical to the criteria established for mental retardation under Section 12.05 C of Appendix 1, Subpart P, Regulation No. 4 (20 CFR § 404 et. seq.) adopted pursuant to the federal Social Security Act set out in Title II of the United States Code (42 USC); and that the criteria for mental retardation employed by the Vineland Adaptive Behavioral Test protocol is substantially identical to that prescribed by the federal guidelines and does not constitute a separate and additional mental retardation criteria; and that the Plaintiff, with a performance IQ of 68, verbal IQ of 80 and a full scale IQ of 73 and with other severe mental or physical impairments meets the aforesaid criteria for mental retardation.

Review of administrative agency decisions both by the circuit court and by the Supreme Court on appeal is limited in scope. *Thomas* v. *Arkansas Department of Human Serv.*, 319 Ark. 782, 894 S.W.2d 584 (1995). Our review is not directed toward the circuit court but toward the decision of the agency recognizing that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Franklin* v. *Ark. Dep't of Human Serv.*, 319 Ark. 468, 892 S.W.2d 262 (1995). In addition, this court will not substitute its judgment for that of the agency unless the agency's decision is arbitrary and capricious. *Arkansas Bank & Trust Co.* v. *Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994). Finally, the evidence is given its strongest probative force in favor of the agency's ruling, and we do not reverse an agency decision when there is substantial evidence to support it. *Thomas, supra.*

Because our review is not directed toward the circuit court, we need only review the decision of the agency. On October 18, 1993, DHS issued its final decision terminating Kistler's participation in the Waiver Program. The sole basis for the hearing officer's decision to terminate benefits was the determination by

the Utilization Review Section of the Office of Long Term Care that Kistler did not meet the ICF/MR Level of Care criteria because of her WAIS and Vineland Adaptive Behavior Scores. The relevant findings of fact and conclusions of law were:

## FINDINGS OF FACT

\* \* \*

5. The summary of the Administrative Hearing was forwarded to the Utilization Review Section on December 15, 1992.

6. An EMS-704 dated January 12, 1993 was received in the Appeals and Hearings Office which indicated a decision that Ms. Kistler did not meet the criteria for DDS Waiver Services.

7. According to a memorandum from Walter O'Neal, M.D., Medical Director, Economic and Medical Services, dated January 14, 1993, Ms. Kistler was determined to not meet the criteria for ICF/MR level of care because her WAIS-R and Vineland Adaptive Behavior scores exceeded 70, which represents the upper limit of eligibility for ICF/MR level of care.

## CONCLUSIONS OF LAW

1. Medical Services Policy 2075 states that Public Law 97-35, Section 2176, the Omnibus Reconciliation Act of 1981 allows states the option of providing home and community-based services, as an alternative to institutionalization, to a limited number of individuals with a developmental disability who would otherwise require an ICF/MR Level of Care.

2. Medical Services Policy 2075.1 lists eligibility requirements that must be met by Waiver applicants, including *(#1) that individuals must be developmentally disabled as determined by the Division of Developmental Disabilities Services (DDS), and (#10) that individuals must be determined by the LTC Utilization Review Committee to require an ICF/MR level of care.*

3. Medical Services Policy 2075.3 #1 states prior to Waiver

acceptance, DDS will administer a comprehensive Diagnosis and Evaluation to determine that applicants are individuals with developmental disabilities. DDS will route form EMS-703, psychological reports, and medical reports to the OLTC Utilization Review Committee.

4. Medical Services Policy 2075.3 #2 states upon receipt of the EMS-703 and other reports, the Utilization Review Committee will determine if the applicant meets the ICF/MR Level of Care requirements. The results will be routed by EMS-704 to the County Office.

5. Medical Services Policy 2075.3 #2 also states if at any time an individual does not meet the requirements for an ICF/MR Level of Care, he/she will not be Waiver eligible.

6. *The Level of Care Criteria issued by the Office of Long Term Care* governing medical necessity eligibility for the developmentally disabled to be medicaid eligible for services provided in an Intermediate Care Facility for the Mentally Retarded provide that a client must have a diagnosis of developmental disability, due to a severe, chronic disability which: (1) *is attributable to a mental or physical impairment or combination thereof*; (2) is manifested before age 21; (3) is likely to continue indefinitely; (4) results in substantial functional limitations in 3 or more of the following areas of major life activity: self-care, receptive and expressive language, learning, mobility, self-direction, capacity for independent living, economic self-sufficiency; and (5) reflects the client's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are of life-long or extended duration and are individually planned and coordinated; further, a pre-admission/pre-reimbursement evaluation of the client performed by an interdisciplinary team (including the areas of psychology, medical, nursing, social and habilitation, as a minimum) must determine the need for active treatment, outline the areas of active treatment needed by the client, and state that the needs of the client will be met as a resident in an ICF/MR.

## DECISION

In order to be certified for Alternate Waiver Services, an individual must meet the eligibility requirements specified in MS 2075.1, including the need for an ICF/MR level of care. At the time of Ms. Kistler's annual reevaluation, *the Utilization Review Section of the Office of Long Term Care determined that she did not meet the ICF/MR Level of Care criteria, based on her WAIS and Vineland Adaptive Behavior Scores, and this determination was not reversed upon reconsideration of her eligibility following the appeal. One element of the medical necessity determination for an ICF/MR level of care classification considers the degree of functional limitations in the areas of major life activities, which is measured by the Vineland Adaptive Behavior test. Ms. Kistler's score in this testing did not support a substantial limitation; therefore, she was not determined to meet the ICF/MR Level of Care criteria. . . .*

(Emphasis supplied.)

In August of 1992, Ms. Kistler was notified her benefits would be terminated because she: "Does not meet ICF/MR admission criteria." After the administrative hearing, Walter O'Neal, M.D., Medical Director of the Economic and Medical Services Division, was contacted by the Appeals and Hearings Office. Dr. O'Neal responded in a letter that both Ms. Kistler's WAIS-R Full Scale IQ and her Vineland Adaptive Behavior Score exceed the upper limits of eligibility for ICF/MR level of care. These scores were from the testing done prior to her admission to the Waiver Program in 1991. No new testing was done for the 1992 reevaluation. Dr. O'Neal stated the upper limits of eligibility were a score of 70 on both the WAIS and Vineland tests, and Ms. Kistler's "application is denied." Based upon Dr. O'Neal's response, the hearing officer affirmed the termination of benefits to Ms. Kistler.

This case is comparable to *Franklin* v. *Arkansas Dep't of Human Servs., supra*, where we reversed the agency's decision. In his concurring opinion, Justice Newbern wrote "[a] decision can be nothing but arbitrary when it is based upon no discernible standard." In the instant case, Ms. Kistler's benefits were terminated because, according to Dr. O'Neal, her WAIS-R Full Scale IQ and her Vineland Adaptive Behavior Score exceeded the upper

limits of eligibility for ICF/MR level of care. However, other than the letter from Dr. O'Neal, we are unable to ascertain the "limits of eligibility."

Medical Services Policy 2075.1 (#10) states that individuals, to be eligible, must be determined by the Long Term Care Utilization Review Committee to require an ICF/MR level of care. In her conclusions of law, the hearing officer states that the Level of Care Criteria issued by the Office of Long Term Care provide that a "client must have a diagnosis of developmental disability, due to a severe, chronic disability which: (1) is attributable to a *mental or physical* impairment or combination thereof. . . ." The record, however, is devoid of how that determination was made — other than Dr. O'Neal's statement of the applicable standard. On appeal, the appellant asserts Ms. Kistler did not fall within the definition of developmentally disabled, but the appellant has failed to express how the agency defines developmentally disabled.

The trial court applied federal social security guidelines and found the appellee met the mental retardation requirements. The trial court further found that the appellee has severe physical impairments which were also sufficient to justify an award of Alternative Medicaid Waiver Services. However, in its brief to the circuit court, the appellant contended the Waiver Program falls under the medicaid program which is administered by the appellant and, therefore, the social security regulations should not be applied.

We will not speculate, as the trial court did, that the federal criteria would be substantially identical to the state criteria if any criteria indeed existed. To be invalid as arbitrary or capricious, the agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *See Enviroclean, Inc.* v. *Arkansas Pollution Control*, 314 Ark. 98, 856 S.W.2d 116 (1993). Since the appellant has not established that a discernible standard exists, we hold the termination of the appellee's benefits was arbitrary.

*II. Attorney's Fees and Costs.*

The trial court ordered the appellant to pay all court costs and an attorney's fee for the appellee's attorney in the

amount of $5,000.00. Our general rule relating to attorney's fees is that the recovery of attorney's fees is not allowed except when expressly provided for by statute. *State* v. *McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994); *Chrisco* v. *Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). On appeal, the appellee submits that "overriding public policy requires the finding of an implied authorization in the Administrative Procedures Act for the payment of court costs and attorney's fees to or on behalf of claimants who prevail against State Agencies in administrative reviews." However, we find no basis for the award of attorney's fees.

Ark. Code Ann. § 25-15-212 (Repl. 1992) provides the cost of the preparation of the record shall be borne by the agency, and the agency may only recover the cost of the record from the appealing party if the agency is the prevailing party. Thus, the statute provides only that the cost of the record shall be borne by the agency. The terms "costs" or "expenses" when used in a statute do not ordinarily include attorney's fees. *State* v. *McLeod, supra.* Consequently, an award of attorney's fees is not expressly provided for by § 25-15-212.

Further, § 25-15-212 establishes an entitlement to "judicial review of the action under this subchapter." Section 25-15-212 establishes the rules and procedures applicable to the process. In *Whitlock* v. *G.P.W. Nursing Home, Inc.*, 283 Ark. 158, 672 S.W.2d 48 (1984), this Court held the Rules of Civil Procedure do not apply to the judicial review procedure. In fact, we stated that when a party chooses to proceed pursuant to the Administrative Procedure Act he is bound by the procedures set out therein. *Id.* The procedures set out provide only that the cost of the preparation of the record may be borne by the agency.

Finally, Ark. Const. art. 5, § 20 prohibits awards of damages in lawsuits against the State of Arkansas and its institutions. *Smith* v. *Denton*, 320 Ark. 253, 895 S.W.2d 550 (1995). In *Smith*, we recognized that if officers and employees of the State act without malice and within the scope of their employment, they are immune from an award of damages, including attorney's fees, in litigation. The trial court did not find that any of the DHS employees acted with malice, nor is there any evidence that the employees acted with malice. Consequently, the circuit court had no basis for the award of an attorney's fee.

### III. *Statutory and Constitutional Violations.*

The circuit court found DHS failed to inform Ms. Kistler of the existence of a substantial body of evidence considered by the hearing officer, and the failure to make her privy to all the evidence material to and considered in arriving at the administrative decision constituted a deprivation of her right to due process as guaranteed by the Arkansas and United States Constitutions, thereby rendering the administrative decision fatally defective. In addition, the court found the appellant "failed to file the entire administrative record of the administrative proceedings with this court within ninety (90) days after the filing of Plaintiff's petition as required by Ark. Code Ann. 25-15-212(d)(1) and therefore defaulted in its duties and obligations as specifically prescribed by the Act." Because we find the agency's decision was arbitrary, we need not address these points.

In sum, we affirm the circuit court's reversal of the agency's decision terminating Ms. Kistler's benefits and reverse the circuit court's award of an attorney's fee.