James PLEDGER, Director of the Arkansas Department of Finance and Administration, and Timothy J. Leathers, Commissioner of Revenues *v.* Frank HALVORSON, et al.

95-1321                                921 S.W.2d 576

Supreme Court of Arkansas
Opinion delivered April 29, 1996

*Kenneth R. Williams,* for appellants.

*Poynter & Gearhart, P.A.,* by: *Terry M. Poynter,* for appellees.

ANDREE LAYTON ROAF, Justice. This is an appeal by the Director of the Department of Finance and Administration and the Commissioner of Revenues from a chancellor's holding that the appellees' mobile homes, which were attached to rented lots in a mobile-home park, were fixtures and not tangible personal property subject to the gross-receipts (sales) tax. The chancellor ordered a refund to the appellees of the gross-receipts taxes paid upon purchase of their mobile homes and awarded attorney's fees to the

appellees. We agree that the chancellor erred and reverse and dismiss.

Each of the appellees ("taxpayers") purchased a manufactured or mobile home located in the Rolling Meadows Mobile Home Park in Mountain Home, Arkansas, between October 1991 and May 1994; the Department of Finance and Administration ("DFA") collected sales tax from the taxpayers on the purchases. The taxpayers filed claims for refund pursuant to Ark. Code Ann. § 26-18-507 (Repl. 1992). The claims were denied, and the taxpayers filed the instant action in Baxter County Chancery Court.

The taxpayers contended that (1) their purchases were exempt from the gross-receipts tax as isolated purchases pursuant to Ark. Code Ann. § 26-52-301 (Repl. 1992), (2) the gross receipts tax was an illegal exaction and violated the Fourteenth Amendment to the United States Constitution, (3) the statute imposing the tax was administered by DFA in an unconstitutionally discriminatory manner, and (4) the mobile homes or manufactured homes were fixtures rather than personalty subject to sales tax. In addition to seeking a refund, the taxpayers requested attorney's fees and costs. DFA admitted that the taxes had been paid and that the claims for refund had been made and denied; however, DFA denied that the taxpayers were entitled to a refund or attorney's fees.

The chancellor made the following findings of fact. All of the taxpayers were commonly situated as purchasers of homes affixed to lands belonging to the Weymeyer family trust in the Rolling Meadows Mobile Home Park. They pay a monthly rental on the grounds around and beneath their mobile homes. Each of the homes had lost its character as transportable because there were no tongues, axles, or wheels on any of the homes, and the homes had all been placed on concrete or concrete-block foundations with underground utilities and extensive structural modifications including roofs, patios, enclosed porches, and carports. All of the homes were purchased from former owners at the same location and had been utilized as permanent dwellings through as many as four different owners. The proof established the near impossibility of removal of the homes absent extensive and expensive efforts.

However, the chancellor also found that ownership of the homes carried with it the right to remove the homes at any time and that the owners have only a leasehold interest in the real

property on which the homes are located. Finally, the chancellor concluded that neither the current owners nor the previous owners had manifested any desire to move the mobile homes from the lots; in fact, they had more firmly affixed the dwellings by making improvements.

DFA argues that the chancellor erred in holding that mobile homes attached to rented lots in a mobile-home park are "fixtures" and not subject to sales tax as tangible personal property. Arkansas Code Annotated § 26-52-301 (Supp. 1995) provides in part that there is levied an excise tax of three percent upon the gross proceeds or gross receipts derived from all sales to any person of tangible personal property. In the instant case, the chancellor determined that the isolated-sale exemption was not applicable. He concluded that the gross-receipts tax could not be levied because the mobile homes are not tangible personal property. *See Pledger* v. *Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994); *Leathers* v. *A & B Dirt Movers, Inc.*, 311 Ark. 320, 844 S.W.2d 314 (1992). Consequently, DFA had the burden of proving the propriety of the tax, and all doubts and ambiguities had to be resolved in favor of the taxpayers. *Id.*

■ Although chancery cases are reviewed *de novo*, this Court will not disturb the chancellor's findings of fact unless they are clearly erroneous. *Boeckmann* v. *Mitchell*, 322 Ark. 198, 909 S.W.2d 308 (1995); *Pledger* v. *Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994). On appeal, DFA does not challenge the chancellor's factual findings; it contends the mobile homes are personal property rather than fixtures.

■ This Court has outlined the basic rules for determining whether an article remains personal property or becomes a fixture. *McIlroy Bank & Trust* v. *Federal Land Bank*, 266 Ark. 481, 585 S.W.2d 947 (1979); *Corning Bank* v. *Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949 (1979). The test is: (1) whether the items are annexed to the realty, (2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected, and (3) whether the party making the annexation intended to make it permanent. *Id.; see also* 5 Richard R. Powell, *The Law of Real Property* ¶ 652[1] (1987).

■ As to the third element, we have stated that the intention is inferred from the nature of the chattel, the relation and situation

of the party making the annexation, the structure and mode of annexation, and the purpose for which the annexation has been made. *Corning Bank, supra.* This Court has stated that the intention of the person making the annexation is a consideration of primary importance. *Farmers Mutual Ins. Co. v. Denniston,* 237 Ark. 768, 376 S.W.2d 252 (1964). However, contrary to the assertion of the dissent, "courts apply an *objective* test and arrive at the annexer's intention by looking to his outward acts rather than to the inner workings of his mind." *Id.* (Emphasis supplied.)

DFA concedes that the first element of the test is established because it is undisputed that the mobile homes are affixed to the real estate; the wheels and tow tongues have been removed, and the mobile homes have been placed on permanent foundations or pillars. However, DFA contends that neither the second nor the third element is satisfied; it principally contends that the intent requirement of the test has not been met.

In 5 Richard R. Powell, *The Law of Real Property* ¶ 652[1] (1987), the discussion of tests for a fixture provides:

> One of the primary factors giving rise to a finding that the affixed item is or is not a fixture has to do with the relationship of the party to the real estate. If the item being affixed is owned by the same person who owns the land, then the act of attaching the item to the realty is generally considered a sufficient basis for an objective observer to regard the item as having become part of the real estate. If, on the other hand, the owner of the item affixes it as a tenant to the property owned by the landlord, the opposite presumption generally arises. The likely intent of the tenant negates the fixture characterization because the tenant has probably installed the item for his own enjoyment, convenience or use and will generally be regarded as intending to preserve rights in the item as personalty.

In *Farmers Mutual Ins. Co. v. Denniston,* 237 Ark. 768, 376 S.W.2d 252 (1964), this Court concluded that a compelling reason for concluding that a house trailer did not lose its identity as personal property was the fact that it was placed on land belonging to another party rather than the owner of the trailer. The court commented that it was apparent that the owner of the trailer did not contemplate leaving it on the property as he did not even have a

lease to the property.

■ In this instance the evidence does not support the finding that the annexation of the mobile homes is intended to be permanent. Although the chancellor concluded that none of the taxpayers had manifested any intent to move their homes, the taxpayers admitted that they claim the right to move their mobile homes at the termination of their rental agreements. The mobile home park owner further testified that she claims no ownership in the homes because of their annexation to her property. It is clear that a "disinterested observer would doubt that a tenant would want to give up ownership of an item he has attached on the landlord's property." 5 Richard R. Powell, The Law of Real Property ¶ 652[4] (1987).

■ DFA also submits that the second element was not satisfied because the mobile homes could easily be adapted for use on any other realty. DFA presents no further argument beyond this bare assertion, and no authority for this proposition; we need not address such an argument, as it is not apparent without further research that it is well founded. *See Haase* v. *Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996).

■ The dissent contends that the characterization of mobile homes or manufactured housing as "tangible personal property" is at odds with other Arkansas tax laws. However, the "other" tax laws cited by the dissent do not involve the gross-receipts (sales) tax. The Arkansas Gross Receipts Act provides that "[t]he tax imposed by this act shall be *in addition to any or all taxes* except as otherwise provided in this act." Ark. Code Ann. § 26-52-104 (Repl. 1992) (emphasis added). Further, Ark. Code Ann. § 26-52-504 (Supp. 1995), *Sale of house trailers or mobile homes*, makes it clear that the General Assembly intended for certain mobile homes to be subject to sales tax.

■ For its second point, DFA contends that there is no statutory authority for an award of attorney's fees in this case. The taxpayers concede this issue. The general rule relating to attorney's fees is that the recovery of attorney's fees is not allowed except when expressly provided for by statute. *Arkansas Dep't of Human Servs.* v. *Kistler*, 320 Ark. 501, 898 S.W.2d 32 (1995); *Chrisco* v. *Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

Reversed and dismissed.

JESSON, C.J., dissents.

BRADLEY D. JESSON, Chief Justice, dissenting. I dissent for two reasons. First, the majority has not given due deference to the chancellor's findings of fact. Second, the State of Arkansas should not be allowed to treat mobile homes or manufactured homes as real property for some tax purposes and personal property for other tax purposes.

The chancellor's findings of fact focused on the third prong of the test set out in the *McIlroy Bank & Trust* and *Corning Bank* cases, *i.e.*, whether the party annexing property to land intended to make it permanent. The overwhelming majority of evidence points to the conclusion that the appellees had every intention of keeping their homes permanently affixed to the land in the Rolling Meadows Mobile Home Park. As the chancellor noted in his order, the appellees "purchased their homes already affixed and have maintained them in place as purchased." He also noted that "not one of these parties has testified to any intent to move their home." The majority seems to equate the appellees' *right* to move their homes with the *intention* to move their homes. If that is the case, no mobile home or manufactured housing on leased land will ever be characterized as anything other than personal property, despite the owner's actual intention. The majority also ignores the evidence in support of the chancellor's finding that:

> each of the homes in this litigation have long lost their character as transportable as there are no tow tongues, axles or wheels on any of the homes, and they have all been placed in concrete or concrete block foundations with underground utilities and extensive structural modifications including roofs, patios, enclosed porches, carports and room additions, which are firmly affixed to the land by concrete, post and pillar, or similarly anchored.

The question of intent is one which is particularly in the realm of the fact-finder to resolve. Findings of fact should be affirmed unless clearly erroneous. ARCP 52(a).

My second problem with the majority holding is that the characterization of mobile homes or manufactured housing as "tangible personal property" is at odds with other Arkansas tax laws. For the purpose of *ad valorem* taxes, such homes permanently affixed on land which is owned *or leased* by the homeowner are deemed real

property. Ark. Code Ann. § 26-3-203(a)(1) (Repl. 1992). At the hearing before the chancellor, Baxter County Appraiser Lee Farrier testified that the appellees homes were carried on the real-estate property cards and assessed as improvements on the real estate. The appellees now end up with the worst of both worlds. Their permanently affixed mobile homes are subject to real-property taxes as improvements to real estate and also subject to sales tax as personal property. It should not be both.

The discrepancy also shows up in the real-estate-transfer tax. The tax is imposed on deeds, instruments, or writings by which lands tenements or other realty is sold. Ark. Code Ann. § 26-60-105(a) (Supp. 1995). One of the homeowners, Mildred Jett, testified at trial that she paid such a tax on the purchase of her home.

Finally, the majority opinion is at odds with the general definitions contained in Ark. Code Ann. § 26-1-101 (Repl. 1992). That code section defines real property as:

> not only the land itself, whether laid out in town lots or otherwise, with all things therein contained, but also all buildings, structures, improvements and other fixtures of whatever kind thereon and all rights and privileges belonging or in anywise appertaining thereto.

> Personal property is defined as:

> Every tangible thing being the subject of ownership, whether animate or inanimate, other than money, and not forming a part of any parcel of real property as defined.

I believe consistency requires a holding that, under the facts of this case, the appellees' homes are not personal property but are realty, in the sense that they are fixtures or improvements. I respectfully dissent from the majority opinion.