Genevieve ELLIOTT, Personal Representative of the Estate of
Diana Sue McGowen, Deceased *v.* BOONE COUNTY
INDEPENDENT LIVING, INC.

CA 96-18                                                939 S.W.2d 844

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered March 5, 1997

*Jerry D. Patterson,* for appellant.

*Davis & Goldie,* by: *James E. Goldie,* for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant, Genevieve Elliott, appeals from an order staying the proceedings on her wrongful-death complaint against appellee, Boone County Independent Living, Inc., until appellant paid appellee's costs and attorney's fees in connection with a previously dismissed wrongful-death action. Appellant argues that the trial court was without authority to make payment of attorney's fees a condition to having the stay lifted. Because we conclude that appellant's point was not preserved for appeal, we do not address it on its merits, and we affirm.

Appellant first filed her wrongful-death lawsuit against appellee on May 7, 1993. On February 10, 1994, appellant took a voluntary nonsuit pursuant to Ark. R. Civ. P. 41. Appellant refiled the action on February 9, 1995. Appellee answered and, citing Ark. R. Civ. P. 41(d), moved for an order staying the proceedings until appellant paid appellee $105.68 in costs and $4,055.68 in attorney's fees associated with the first action. Appellant did not respond to the motion. Subsequently, the trial court entered an order reciting the above facts and giving appellant until July 14, 1995, to respond to appellee's motion. Again, appellant filed nothing. On September 7, 1995, the trial court, specifically noting the lack of any response by appellant to appellee's motion, entered an order staying the proceedings until appellant paid appellee $105.68 in costs and $3,000.00 in attorney's fees. This appeal followed.

Rule 41(d) of the Arkansas Rules of Civil Procedure provides as follows:

> *Costs of Previously Dismissed Action.* If a plaintiff who has once dismissed an action, or who has suffered an involuntary dismissal in any court, commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Appellant argues that this rule does not authorize trial courts to order the payment of attorney's fees as "costs." Appellant notes

that the supreme court has not decided this issue, *see Transit Homes, Inc. v. Bellamy,* 287 Ark. 487, 701 S.W.2d 126 (1985), but cites *Brady v. Alken,* 273 Ark. 147, 617 S.W.2d 358 (1981), for the general proposition that attorney's fees are not to be allowed as costs except as provided by statute or court rule. *See also Arkansas Dep't of Human Servs. v. Kistler,* 320 Ark. 501, 898 S.W.2d 32 (1995). We recognize that appellant's argument is a strong one and may well have merit. However, because appellant failed to raise the issue in any way before the trial court, we are unable to address it.

█ It has long been held that Arkansas courts have no plain-error rule. Subject to very limited exceptions, none of which are applicable here, the rule in this state is that an argument for reversal will not be considered on appeal in the absence of an appropriate objection in the trial court. *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980); *see Lynch v. Blagg,* 312 Ark. 80, 847 S.W.2d 32 (1993); *Sturgis v. Lee Apparel Co., Inc.,* 304 Ark. 235, 800 S.W.2d 719 (1990). The rule requiring an objection below is no less applicable to questions regarding the award of attorney's fees. *See Farm Bureau Mut. Ins. Co. v. David,* 324 Ark. 387, 921 S.W.2d 930 (1996); *Benton v. Barnett,* 53 Ark. App. 146, 920 S.W.2d 30 (1996). Under the particular facts of this case, where the motion for fees was not acted upon for over six months, during which time the trial court specifically invited appellant to respond to the motion, application of the general rule is especially appropriate.

It was argued in our conference of this case that the trial court lacked "subject-matter jurisdiction" to award attorney's fees under Ark. R. Civ. P. 41(d), and that the issue may, therefore, be raised for the first time on appeal. We conclude, however, that the court did not lack subject-matter jurisdiction over the question of attorney's fees.

In *Banning v. State,* 22 Ark. App. 144, 737 S.W.2d 167 (1987), we explained:

> The rule of almost universal application is that there is a distinction between want of jurisdiction to adjudicate a matter and a determination of whether the jurisdiction should be exer-

cised. Jurisdiction of the subject matter is power lawfully conferred on a court to adjudge matters concerning the general question in controversy. It is power to act on the general cause of action alleged and to determine whether the particular facts call for the exercise of that power. Subject matter jurisdiction does not depend on a correct exercise of that power in any particular case. If the court errs in its decision or proceeds irregularly within its assigned jurisdiction, the remedy is by appeal or direct action in the erring court. If it was within the court's jurisdiction to act upon the subject matter, that action is binding until reversed or set aside. [Citations omitted.]

*Id.* at 149, 737 S.W.2d at 170; *see Leinen v. Arkansas Dep't of Human Servs.*, 47 Ark. App. 156, 886 S.W.2d 895 (1994); *In re: Adoption of D.J.M.*, 39 Ark. App. 116, 839 S.W.2d 535 (1992); *see also Birchett v. State*, 303 Ark. 220, 795 S.W.2d 53 (1990).

■ Clearly, subject–matter jurisdiction of wrongful death actions, such as are involved here, is vested in the circuit courts of this state. Just as clearly, the circuit court is also empowered with authority to hear and determine requests for costs and fees growing out of actions within its assigned jurisdiction. While the court here may have erred in its decision or proceeded irregularly in exercising its assigned jurisdiction, that is entirely different from the matter of its jurisdiction to determine whether to exercise that power or not.

■ Finally, we note the case of *Lewallen v. Bethune*, 267 Ark. 976, 593 S.W.2d 64 (Ark. App. 1980). There, among other things, this court reversed an award of attorney's fees despite the lack of an objection in the trial court. To the extent that *Lewallen* conflicts with this opinion, it is wrong and is overruled.

Affirmed.

ROBBINS, C.J., and ROGERS, STROUD, and NEAL, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting.

*A good law is one that holds, whether you recognize it or not; a bad law is one that cannot, however much you ordain it.* — JOHN RUSKIN

Today a majority of our Court has decided to disregard a good law, yet ordain one that stands 140 years of Arkansas precedent on its head; one that contravenes the overwhelming body of American jurisprudence regarding the shifting of attorney's fees, overrules a decision of this very court in a case directly on point, ignores an eighty-year-old decision by the Arkansas Supreme Court, and cannot be rationally justified alongside the rest of Arkansas law on shifting attorney's fees. Rather than recognize and follow the good law, the majority has decided to uphold a result that a trial court had neither the right nor the power to enter merely because the appellant failed to object to it, as if a trial court is somehow empowered to do a blatantly unauthorized act and an appellate court has no duty to reverse that fundamental error when a litigant has not objected to it below. I respectfully dissent from the unjust result reached today, the convoluted reasoning on which it rests, and the unsound rule of law that it unnecessarily inflicts upon our entire civil litigation process.

Appellant filed a wrongful-death suit in Searcy County that was later transferred to Boone County. She then took a voluntary nonsuit and later refiled the action in Boone County. The appellee answered and separately moved to stay the proceedings pursuant to Rule 41(d) of the Arkansas Rules of Civil Procedure, requesting that costs of $105.68 and attorney's fees of $3,950.00 be imposed to lift the stay. The trial court eventually entered an order granting the stay until appellant paid costs of $105, and attorney's fees of $3,000. Appellant did not submit a brief or objection to the trial court concerning the attorney's fee aspect of the order before it was entered, although the trial court entered an order that set a deadline for filing letter briefs regarding appellee's motion to stay proceedings and award of costs, stating that it would render an opinion after reviewing the file and briefs. Appellant has now appealed the attorney's fee aspect of the order, and the majority has decided to affirm the trial court despite the reality that neither Rule 41(d) nor any other Arkansas authority permits attorney's fees to be included within the meaning of "costs."

Ark. R. Civ. P. 41(d) states:

*Costs of Previously Dismissed Action.* If a plaintiff who has once dismissed an action, or who has suffered an involuntary dismissal in any court, commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Rule 41(d) authorizes a trial court to order that "costs of the action previously dismissed" be paid. It does not authorize the trial court to order the payment of "attorney's fees" for the previously dismissed action. Arkansas law is clear that the term "costs" does not ordinarily include attorney's fees, whether the term is used in a statute (*see Arkansas Dep't. of Human Servs. v. Kistler*, 320 Ark. 501, 898 S.W.2d 32 (1995)), or when it appears in a rule of civil procedure (*see Clawson v. Rye*, 281 Ark. 8, 661 S.W.2d 354 (1983)).

Nevertheless, the majority has decided to affirm the trial court because appellant did not challenge its assessment of attorney's fees. I certainly agree that appellant had ample notice that this issue was before the trial court and adequate opportunity to object to the imposition of attorney's fees as a condition to lifting the stay. However, one need not condone appellant's inexplicable failure to file a brief or otherwise object to the imposition of attorney's fees in order to question the right and power of the trial court, in the first instance, to impose an order to pay the other side's legal fees under the notion of "costs" for purposes of Rule 41(d). Indeed, our court dealt with this very situation in *Lewallen v. Bethune*, 267 Ark. 976, 593 S.W.2d 64 (Ark. App. 1980).

In *Lewallen*, a chancellor assessed costs for lost wages and expenses of witnesses who had not been subpoenaed to testify as well as attorney's fees totaling $2,743.50 against a party for dilatory tactics in filing a motion to recuse two days before trial in an action that had been pending for years. The attorney's fee portion of that award was for $1,365.08, as payment for a Kentucky attorney who had traveled to attend the trial, and who had spent substantial time in trial preparation. Our opinion specifically noted that no objections were made by the appellants to the hearing or to any ruling or finding that the chancellor made, including his

findings and order allowing attorney's fees, lost wages and expenses of the witnesses who were present and ready to testify, but who had not been subpoenaed. Despite the absence of an objection by the appellants and despite the fact that no final judgment had been rendered on the merits of the case, we reached the merits of the appeal and reversed the chancellor's order granting the attorney's fee and costs associated with the unsubpoenaed witnesses, holding that the lower court's action in awarding judgment for the challenged items was appealable under the rule that a judgment granting or denying costs is appealable when the *power* of the court to assess certain items of cost is at issue. *Id.* 267 Ark. at 984, 593 S.W.2d at 68 (emphasis in original text).

*Lewallen v. Bethune* also contains a succinct and authoritative exposition of the Arkansas law that follows the general rule that extraordinary expenses such as attorney's fees are distinguishable from, and therefore not recoverable as, ordinary costs. This has been the law in Arkansas since before the Civil War. *See Temple v. Lawson*, 19 Ark. 148 (1857). As Judge Pilkinton wrote in *Lewallen*, the right to recover attorney's fees from one's opponent in litigation as a part of the litigation costs does not exist at common law and is not allowable without a statute, court rule, or some agreement expressly authorizing the taxing of attorney's fees in addition to the ordinary court costs. *Lewallen*, 267 Ark. at 985. Our legal respect for this proposition was so high and strong that the Arkansas Supreme Court for many years held that even a provision in a promissory note that permitted the holder to recover his attorney's fees was contrary to public policy. *Id.* at 986. That judicial position was not superseded until the enactment of Act 350 of 1951. *Id.* Even since that time, however, the appellate courts of this state have consistently held that recovery of attorney's fees as "costs" is not allowed except when expressly provided by statute or court rule. *City of Hot Springs v. Creviston*, 288 Ark. 286, 705 S.W.2d 415 (1986); *Damaron v. University Estates*, 295 Ark. 533, 750 S.W.2d 402 (1982); *Fausett Builders v. Globe Indemnity*, 220 Ark. 301, 247 S.W.2d 469 (1952); *Roberts v. Feltman*, 55 Ark. App. 142, 932 S.W.2d 781 (1996).

In *Labat v. Dugan Piano Co.*, 130 Ark. 572, 198 S.W. 125 (1917), the Arkansas Supreme Court addressed the very subject

about which the majority is mistaken, *i.e.*, whether a party is barred from obtaining appellate review of trial court judgments that are void on their face. *Labat* involved an appeal from the entry of summary judgment against the owner of a piano and her sureties after the owner had been sued for the purchase price of the piano. After an adverse decision before a justice of the peace, the owner appealed to circuit court and posted a surety bond that provided for her to deliver the piano to the sheriff upon demand in case of an adverse result at trial in circuit court. The circuit court trial resulted in a jury verdict against Labat for $220, plus interest. The circuit court then entered judgment against Labat for the amount of the verdict, declared that judgment to be a lien on the piano, and also entered personal judgment against Labat and the sureties on her bond. Although a motion for new trial was made and overruled, the motion did not challenge the trial court's action in rendering a personal judgment against the appellant and her sureties on the bond. When Labat challenged the trial court's summary judgment in her appeal to the supreme court, the appellee argued, as does the appellee before us, that the supreme court could not review the trial court ruling because no exception was saved when the judgment was entered. The supreme court rejected that argument by the following statement in its decision to reverse the summary judgment:

> It is urged by counsel for appellee that this ruling of court can not be reviewed here for the reason that no exception was saved at the time and embraced in the motion for new trial. The judgment is to that extent void on its face, because it is unwarranted. Therefore, no exceptions were necessary.

> It may be likened to a judgment by default upon pleadings which do not state a cause of action, and the error of the court, therefore, appears on the face of the record. The erroneous action of the court in rendering this judgment was not one of the things which occurred during the progress of the trial to which exceptions must have been saved in order to call for a review in this court. It was, therefore, unnecessary to note exceptions at the time or to embody the objections in a motion for new trial.

*Id.* at 575, 198 S.W. at 126.

As the supreme court decided and pronounced in *Labat* almost eighty years ago, when a trial court takes action that is void on its face, it is not necessary for a party to object in order to preserve the issue for appellate review. In the case before us, the trial court acted outside its power and right when it awarded an attorney's fee as court costs. Just as the trial court in *Labat* lacked the right or power to award summary judgment on the appellant's surety bond, the trial court in this case lacked the right or power to assess an attorney's fee against appellant as costs under Ark. R. Civ. P. 41(d). The attorney's fee award was void on its face, so that judicial review cannot be prevented by appellant's failure to object below. The only way to avoid that conclusion is to hold that trial courts may impose awards of attorney's fees as costs contrary to 140 years of Arkansas law.

The majority does not and cannot dispute the existence of the longstanding Arkansas rule. They must also acknowledge that the Arkansas rule is consistent with the American rule concerning attorney's fees that provides for each party to bear the cost of their own attorney. *Millsap v. Lane*, 286 Ark. 439, 706 S.W.2d 378 (1986) (citing *Trustees v. Greenough*, 15 Otto 527, 105 U.S. 527, 26 L.Ed. 1157 (1882)). The appellee has cited no authority for the novel notion that the general rule should be disregarded when litigation is refiled by a plaintiff following a voluntary nonsuit, and the majority has cited no Arkansas authority for that proposition either. Thus, the decision today must be seen as a new rule of law permitting attorney's fees to be imposed as costs as a condition to prosecuting a refiled action following a nonsuit if a trial court decides to impose them and nobody objects to it. However, nobody has explained how and why a trial court is somehow now empowered with the right and power to do what it has heretofore never been able to do in Arkansas, and without any statutory or other authorization shown. Instead, the majority opinion casually overrules *Lewallen* and ignores *Labat* without giving any justification for the radical new rule now announced.

Like Athena, who in Greek mythology was born fully grown and armed for battle from the brow of Zeus, the rule of law that the majority today delivers to Arkansas litigants is born doing battle, in this case against an unwitting plaintiff. Unlike Athena, this

new rule is neither beautiful nor wise. One need not be an alarmist to contemplate the mischief that it will produce. Ordinarily, attorney's fees are not recoverable from an opposing party in Arkansas unless a statute or court rule expressly permits it, and then they are only recovered by the *prevailing party* after something has been adjudicated, be it the merits of the litigation or some material aspect of it. However, the majority today introduces a new creature — the attorney's fee that is recovered without anything being adjudicated, before the merits of a lawsuit have been decided (the appellee merely filed its answer and followed it with a motion to stay the lawsuit pending payment of the attorney's fee incurred in the previously dismissed action), and without any legal basis for ordering the opposing party to pay it. The appellee in this wrongful-death action is now being awarded a $3,000 fee from appellant merely because appellant did what the Arkansas Rules of Civil Procedure permit, namely take a voluntary nonsuit. Of course, no one seriously thinks that if appellant ultimately recovers on the merits the trial court will have the authority to refund any part of the amount that it has now been upheld in taking. Moreover, neither the appellee nor the majority can explain how a trial court is somehow authorized and empowered to award an attorney's fee as costs merely because the adverse party fails to object to it.

One would also think that the fact that the rule announced today is manifestly incongruent with the rest of Arkansas' civil procedure concerning attorney's fees would militate against its promulgation. Before today, the only provisions of the Arkansas Rules of Civil Procedure that authorize the recovery of attorney's fees from an adverse litigant were punitive. Ark. R. Civ. P. 37 authorizes a trial court to award reasonable attorney's fees as a sanction against a party that fails to make discovery in violation of discovery rules after having been ordered to do so by the court. Ark. R. Civ. P. 11 authorizes a trial court to award attorney's fees as a disciplinary sanction against litigants and their attorneys who sign pleadings and other papers that have no proper purpose other than to harass other litigants, cause unnecessary delay, or cause needless increase in the cost of litigation. Both Rule 11 and Rule 37 require judicial findings that the party ordered to pay attorney's

fees has engaged in *prohibited conduct*. In fact, Rule 11 provides that the trial court *shall impose* an appropriate sanction, including attorney's fees, whenever it finds that a pleading, motion, or other paper has been signed in violation of the rule. Nowhere do the rules of civil procedure authorize trial courts to award attorney's fees against a litigant for doing something that our rules permit. If the appellant before us nonsuited her wrongful-death action in Searcy County and refiled it in Boone County to comply with some aspect of Arkansas law, then today's decision truly defies reason because she will now be penalized, not merely because she did what Arkansas law and civil procedure permit, but because she did what Arkansas law and civil procedure demand. I cannot imagine a more unreasonable result or rule.

The majority explains its decision to insulate the trial court's ruling from reversal by resorting to the truism that a party must make a timely challenge to trial court error in order to preserve the right to challenge that error on appeal. The general rule requiring that timely objections be raised to trial court rulings in order to preserve the right to appeal them is meant to protect trial courts from being ambushed concerning rulings that they may erroneously make, but which they have the right or power to make in the first instance. Put differently, the general rule means that trial courts will not be reversed for making *erroneous* rulings on matters that they have the right or power to decide when an adversely affected party has failed to protest. However, the *Labat* holding shows that there is a clear difference between an erroneous trial court ruling on a matter that the court has the right or power to decide (as in whether to receive a matter in evidence) and a ruling that is *unlawful* because the trial court had no right or power to make it (as in whether to award attorney's fees absent explicit statutory or rule authority). If this situation involved an erroneous application of a statute or court rule that permits attorney's fees to be paid to a defendant such as appellee when a previously nonsuited action has been refiled, then our time-honored practice of rejecting appeals based on alleged errors not raised in timely fashion before the trial court would be proper and reasonable even if the trial court had incorrectly applied the rule. To

view this case in that light, however, is plainly wrong given the mountain of authority to the contrary.

Moreover, because it is obvious that the trial court had no right or power to award attorney's fees as costs to appellee, either under Rule 41(d) or otherwise, the real issue before us is not whether appellant should have objected below, but whether we have a duty to correct trial court errors brought to our attention involving blatantly *ultra vires* conduct. The upshot of the decision reached today is that appellate courts have no duty to reverse rulings that are beyond the scope or which exceed the legal power of trial courts when they are presented to us in appeals brought by adversely affected parties. This radical philosophy deserves honest criticism, especially in light of the *Labat* and *Lewallen* holdings. In a constitutional democracy the judicial power — like every other governmental power — must come from somewhere. Judicial power is not self-existent. Courts are neither eternal nor omnipotent. Rather, it is a fundamental tenet of American government dating to the Declaration of Independence that governments and the courts within them derive their just powers from the consent of the governed. That truth is also stated in the preamble to the Arkansas Constitution, and in the judicial article of that document that specifically vests the supreme court, circuit courts, and other designated courts with judicial power in Arkansas. The supreme court is expressly vested with superintending power over circuit courts such as the trial court from which this appeal has been taken. The Arkansas Court of Appeals was created in 1979 by Amendment 58 to the Arkansas Constitution, and the supreme court has decided that the appellate jurisdiction of the Court of Appeals includes appeals such as the one before us. The people of Arkansas have emphatically and deliberately determined that no trial court ruling is automatically insulated from judicial review, and this certainly includes trial court rulings that exceed the legal right or power of trial courts. The idea that an appellate court has no duty to reverse trial court conduct that exceeds the legal power and rights vested in trial courts is so fundamentally contrary to everything upon which American jurisprudence and democracy is based that it is not surprising that neither the majority nor appellee can cite any rule of law for it. What is surprising about that

idea — nay, astounding — is that the majority fails to comprehend the flagrant folly in holding, in effect, that an appellate court has no duty to reverse a patently *unlawful* (as contrasted with a merely incorrect) trial court ruling simply because an appellant failed to object to the unlawful ruling below, thereby thumbing its nose at the fundamental principle of derived governmental power upon which American democracy, Arkansas government, and a recognized function of judicial review is founded.

I foresee that the decision today will increase the delays and expense involved with civil litigation. Defending parties will file motions to stay proceedings in refiled actions after nonsuits, and will seek attorney's fees. Even when the fee requests are met with timely and strenuous objections by plaintiffs, needless time and money will be wasted preparing, filing, and arguing objections to the fee requests. Trial courts that are already overworked and understaffed will be forced to consider the motions, fee requests, and objections (whether hearings are held or not). All of this will take time, and none of it will help resolve the merits of lawsuits. Of course, none of the fee requests can properly be granted under Arkansas law as it has existed for more than 140 years, and which the misguided decision rendered today cannot change; but thanks to the decision, defendants have everything to gain and nothing to lose by filing the requests.

In fact, defending parties will now insist that their attorneys seek to recover attorney's fees in refiled actions following nonsuits because doing so might produce the result reached by the trial court in this case. The idea of threatening a plaintiff with the prospect of paying the cost for defending a nonsuited case as a condition to prosecuting a refiled case will be immensely popular. If trial courts grant the fee requests (despite lacking any legal authority for doing so), then plaintiffs will properly appeal, and the already congested appellate docket will be affected. The irony is that virtually all of the motions and appeals will (or should be) decided based upon the same law that the majority has gone out of its way to avoid following in this case. The entire scenario will be a colossal waste of time, legal skills, judicial resources, and client funds, and a disservice to the cause of justice unlike any other known to recent memory of jurisprudence in Arkansas.

I unapologetically declare the rule announced today bad and wrong law, and will never condone it. In the meantime, I hope that this appellant will seek the relief she deserves from the Arkansas Supreme Court by a petition for review.