McILROY BANK & TRUST, Fayetteville,
Arkansas *v.* THE FEDERAL LAND BANK
OF ST. LOUIS

79-70                                    585 S.W. 2d 947

Opinion delivered September 10, 1979
(Division II)

*McAllister, Wade, Burke & Eldridge, P.A.,* by: *John R. Eldridge, III,* for appellant.

*Pearson & Woodruff,* by: *C. Thomas Pearson, Jr.* and *Priscilla Karen Pope,* for appellee.

JOHN I. PURTLE, Justice. This is a mortgage foreclosure on a grade A dairy farm and the appurtenances and equipment. The Federal Land Bank and the owners negotiated a loan and first mortgage on the property. Subsequently, the owners executed another mortgage as well as a financing statement and security agreement to McIlroy Bank & Trust. Both the mortgages and the financing statement were duly recorded. McIlroy claimed a superior lien under the Uniform Commercial Code to the equipment or fixtures mentioned in its agreement. The court held in favor of the Federal Land Bank by declaring all of the appurtenances and fixtures mentioned in both instruments to be a part of the realty. McIlroy appeals.

We are called upon to determine whether certain items of dairy equipment were fixtures and subject to a real estate mortgage or whether they were personalty and subject to the Uniform Commercial Code. We are of the opinion that under the circumstances present in this case the items in dispute became a part of the realty.

On February 4, 1976, the Suttons executed and deliver-

ed to the Federal Land Bank of St. Louis a real estate mortgage as security for payment of a promissory note. This mortgage was filed on February 10, 1976. It was reexecuted and refiled on September 28, 1976. December 8, 1976, the Suttons gave a second mortgage to McIlroy Bank & Trust Company to secure an indebtedness of $100,000. This mortgage was recorded on December 17, 1976. Additionally, McIlroy secured from the Suttons a financing statement and security agreement which extended to various items of dairy equipment mentioned in the instrument. The financing statement and security agreement were filed on October 27, 1977.

The Suttons defaulted on both transactions and McIlroy took possession of the milking equipment and began to negotiate a sale for the balance of the dairy equipment. The Federal Land Bank obtained an injunction until the matter could be decided by the court.

The mortgage from the Suttons to the Federal Land Bank contained the following language:

> . . . together with all rights, interest, privileges, easements and appurtenances thereunto appertaining, and the rents, issues and profits thereof, and together with all improvements and fixtures now or hereafter erected thereon, including all heating, air conditioning, lighting, plumbing and water supply apparatus, storm windows and doors, window screens, screen doors, window shades, awnings, locks, fences, including gates, trees, shrubs and such other fixtures and improvements used or useful in the operation of the premises . . . .

The mortgage to McIlroy described the same real estate and listed items of equipment which were being used at the dairy barn. The evidence shows that most, if not all, of the equipment was attached to other equipment through refrigeration lines or water or milk lines. Most of it was inside the barn but portions were affixed to concrete slabs outside the barn with connecting pipes to other equipment inside the barn. Appellant sold part of the equipment to a man who described the manner in which he took possession of it. For the most part, he used a hammer, wrench, or screwdriver, to

detach the various items for removal purposes. After removal several holes were left in the side of the barn where equipment had been extended through the walls.

During the trial of the case the purchaser of the equipment was asked whether or not "customarily dairymen in the area remove equipment from their barn." Although the witness answered in the affirmative, the court sustained the objection by the appellee. Appellant contends it was proper to ask such question, especially in view of the fact that this witness had been examined on methods of installing equipment in a dairy barn. Appellant argued this answer would have a bearing on the intent of the Suttons in affixing the equipment in place. The court, in holding in favor of the Federal Land Bank, relied heavily upon *Alwes* v. *Richheimer*, 185 Ark. 535, 47 S.W. 2d 1084 (1932).

We agree that the court properly relied upon *Alwes*, supra. As was stated in *Choate* v. *Kimball*, 56 Ark. 55, 19 S.W. 108 (1892), the test for determining whether items are fixtures is: (1) whether the items are annexed to the realty; (2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected; and (3) whether the party making the annexation intended to make it permanent. Over the years our rule has not substantially changed. It is undisputed that practically all of the items were annexed to the realty although it may have been very minimal in some instances. Neither is it disputed that all of the items were appropriate for and used in the operation of a grade A dairy farm. The third test as to whether the parties intended to make the equipment permanent is not as easily determined. The Suttons did not testify. A representative of the Federal Land Bank, one of the parties to the original transaction, testified that the items were in place at the time of the mortgage and he made a note that the property was being operated as a grade A dairy. When you consider the language in the appellee's mortgage it is quite clear that it is at least as broad as the language in *Alwes*, supra. Therefore, this equipment could easily become fixtures. There is no evidence in the record that these items were attached to the realty on a temporary basis or that they were held for resale or that the Suttons intended to remove the

equipment if they should move or cease operation. Under these facts here in question we feel the third test has been met and the equipment became permanent fixtures. In fact, this equipment was suitable for no other purpose than to use in the operation of a dairy farm.

Although the objection was sustained as it related to the question of whether or not owners customarily removed this type of equipment from the premises, the answer was, nevertheless, included in the record. As was stated in *Triumph Electric Co.* v. *Patterson,* 211 F. 244 (C.C.A. 8th Cir. 1914):

> The general rule is that the lien of a mortgage of realty embraces whatever is annexed to the land in such manner as to become, in contemplation of law, part and parcel thereof. This includes not alone buildings and structure, but likewise machinery which forms an integral part of the same, and is designed, adapted and intended for permanent use therein, with a view to the purpose for which they are employed. This is true in the absence of special local custom to the contrary, although such machinery may be susceptible of removal and installation elsewhere, and although in the structure other similar machinery might be substituted for it.

Whether or not the owner of the equipment, after attaching it to realty, subsequently decided to remove it is not the controlling factor. One might remove a porch from his residence although it was built for the purpose of serving the residence. Many houses are placed upon land by the use of blocks or pillars and it is not a great problem to remove the entire house with modern equipment. Nevertheless, there can be no question but that the house or porch was attached and became part of the realty.

For the reasons above stated, we feel the judgment of the trial court should be affirmed.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HOLT, JJ.