**In re Henry Earl RENAUD and Opal Minnie Renaud.**

**M. Randy Rice, Trustee, Plaintiff,**

**v.**

**Simmons First Bank of Searcy, Defendant.**

**Bankruptcy No. 4:02–BK–13437 E.**
**Adversary No. 4:02–AP–1217.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 25, 2003.

---

M. Randy Rice, Rice & Associates, Little Rock, AR, Chapter 7 Trustee.

Richard Ramsay, Eichenbaum Law Firm, Little Rock, AR, for Creditor.

Kent Pray, Pray Law Firm, N. Little Rock, AR, for Debtors.

### *ORDER*

AUDREY R. EVANS, Chief Judge.

The Chapter 7 Trustee's Complaint to Determine the Validity of Liens, to Avoid Liens and to Sell Personal Property Free and Clear of Liens was heard on August 22, 2003, and the Court took the matter under advisement along with an evidentiary objection. The Chapter 7 Trustee, M. Randy Rice (the "**Trustee**"), appeared on his own behalf. Richard L. Ramsay appeared on behalf of the Defendant, Simmons First Bank of Searcy (the "**Defendant**"). James Gowan appeared as the Defendant's representative. Although not parties to this adversary proceeding, the

Debtors were present with their attorney, Kent Pray.

Upon consideration of the pleadings filed, oral argument and evidence presented at hearing, and the applicable law, the Court makes the following findings of fact and conclusions of law in accordance with Rule 7052.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), and the Court has jurisdiction to enter a final judgment in this matter.

## INTRODUCTION

In this case, the Trustee seeks to avoid the liens of Defendant in Debtors' mobile home and an all-terrain vehicle ("ATV") as unperfected. The Defendant raises the following issues in its defense: (1) whether a mobile home is so affixed to the real property on which it sits that a mortgage securing the real property also secures the mobile home; and (2) how a security interest in an ATV is perfected under Arkansas law. Underlying the Defendant's argument with respect to the mobile home is an assumption that if the mobile home has become a fixture, a mortgage on the real property on which it sits is effective to perfect the Defendant's security interest in the mobile home. However, an in-depth analysis of Arkansas law reveals that mobile homes must be perfected in accordance with Arkansas' vehicle titling statute, whether they are affixed to real property or not; accordingly, the Court finds it unnecessary to make a finding with respect to the mobile home's status as a fixture or personal property. Likewise, for the reasons explained herein, the Court finds that ATVs must be perfected in accordance with Arkansas' vehicle titling statute.

## FACTS

The Debtors, Henry and Opal Renaud, filed for relief under Chapter 7 of the Bankruptcy Code on March 2, 2002. At the time of filing, the Debtors owned the following property which is at issue in this case: a 1997 Spirit mobile home situated on real property owned by the Debtors and a 2001 Polaris ATV. The Debtors had borrowed money from the Defendant to refinance their real property and mobile home, and to purchase the ATV. The relevant facts with respect to each item of property are described below.

### The Mobile Home

The Debtors purchased the real property known as 8737 Dennette Road, Jacksonville, Arkansas, in 1996 from Eugene Childers, an individual. At that time, there was a 10 × 50 trailer located on the property. The Debtors lived in that trailer until July of 1997, when the Debtors purchased a new 16 × 80 1997 Spirit mobile home from Oakwood Acceptance Corporation ("**Oakwood**") and traded in the existing trailer to offset the purchase price. Oakwood financed the purchase and had its lien noted on the mobile home's certificate of title. In 2001, the Debtors refinanced both the mobile home and the real estate by borrowing $33,100.83 from Defendant. In order to secure the debt, Debtors gave Defendant a mortgage on the Debtors' real property. The mortgage provided standard language including "all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate" in its description of the mortgaged property. Ms. Renaud testified that it was her intent to mortgage both the mobile home and the

---

**1.** All references to rules in this order refer to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

real property. The mortgage was recorded in the Pulaski County Clerk's office on August 16, 2001. Mr. James Gowan, who is employed by the Defendant as a commercial loan officer, testified that Oakwood had signed the title to the mobile home to release its lien, and the title was placed in the Debtors' loan file.

### The ATV

The Debtors borrowed money from the Defendant in 2001 to purchase the ATV. The same year, Opal Renaud signed a new note refinancing the ATV and a 1994 Ford truck (what is commonly referred to as a "consolidation note"). To secure the note, Opal Renaud signed a security agreement granting Defendant a security interest in the truck and ATV. The Defendant had its lien on the 1994 truck noted on its certificate of title and prepared a UCC financing statement on the ATV. The note and security agreement, certificate of title to the truck, and a UCC financing statement bearing no file-mark from the Secretary of State were admitted into evidence. Mr. Gowan testified that the UCC financing statement was filed with the Secretary of State in order to perfect the Defendant's lien on the ATV. The Defendant moved to introduce a certified file-marked copy of the UCC financing statement into evidence which showed that the financing statement had been filed with the Secretary of State's office on July 31, 2001. Pleading surprise, the Trustee objected to the introduction of the file-marked UCC financing statement on the basis of this Court's "Amended Pre–Trial Order" entered on January 3, 2003. Paragraph 3 of the Amended Pre–Trial Order required the parties to exchange exhibits by March 31, 2003; that paragraph also stated, "[e]xcept for good cause shown, no exhibits will be received into evidence at trial unless presented in accordance with this order." It is undisputed that the file-marked UCC financing statement was not provided to the Trustee (or the Court) until the day before trial, and that the Defendant's failure to provide the document to the Trustee was inadvertent. The Court took the Trustee's evidentiary objection under advisement.

### DISCUSSION

#### The Mobile Home

The Trustee seeks to avoid Defendant's lien on the mobile home pursuant to 11 U.S.C. § 544, and sell it free and clear of all liens. Section 544(a) provides, in part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

. . .

This section allows the Trustee to avoid prepetition liens that were not perfected under state law before the Debtors' bankruptcy petition was filed. *See Shuster v. Doane,* 784 F.2d 883, 884 (8th Cir.1986).

The Trustee argues that the Defendant does not have a perfected security interest in the mobile home under Arkansas law which requires that liens on mobile homes be filed with the Department of Finance and Administration ("DFA") and reflected on a mobile home's certificate of title. *See* Ark.Code Ann. §§ 27–14–801—

27-14-807 (Arkansas' **"vehicle titling statute"**), and 27-14-703. The Defendant does not dispute that a security interest in a mobile home may be perfected in this manner; rather, the Defendant asserts that the mobile home at issue is secured by the mortgage on the Debtors' real property because the mobile home is permanently affixed to the mortgaged real property. The Trustee disputes that the mobile home is a fixture, and also argues that because there is no specific mention of the mobile home in the mortgage, no creditor could have notice that there is a lien on the mobile home.

■ The parties present both a legal issue (how a security interest in a mobile home is perfected under Arkansas law) and a factual issue (whether or not this mobile home has become a fixture under Arkansas law). Because the Court's decision with respect to the legal issue makes it unnecessary to decide the factual issue, the Court only decides the legal issue presented: specifically, assuming a mobile home has become a fixture under Arkansas law[2], is a mortgage effective to perfect a security interest in such mobile home, or does Arkansas statutory law provide the exclusive method for perfecting a security interest in a mobile home regardless of whether it is affixed to real estate?

Generally, the Uniform Commercial Code ("UCC") provides how a security interest is perfected in personal property, including fixtures to real estate. *See generally* Ark.Code Ann. § 4-9-101 *et seq.* However, in this case, the UCC is of little assistance in that it provides exceptions for both recorded mortgages covering fixtures, Ark.Code Ann. § 4-9-502 (providing that a recorded mortgage may serve as a financing statement as to fixtures if certain conditions are met), and liens subject to vehicle titling statutes, Ark.Code Ann. § 4-9-311 (providing that filing a financing statement is not necessary or effective to perfect a security interest in property subject to Arkansas' vehicle titling statute). Because mobile homes are generally subject to Arkansas' vehicle titling statute, as explained below, the UCC does not provide for perfection of mobile homes. The unique question presented in this case is:

---

**2.** Arkansas Courts have developed the following test for determining whether personal property has become permanently affixed to real property:

> (1) whether the items are annexed to the realty;
> (2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected; and
> (3) whether the party making the annexation intended to make it permanent.

*McIlroy Bank & Trust Fayetteville v. Federal Land Bank of St. Louis,* 266 Ark. 481, 585 S.W.2d 947, 948 (1979) (citing *Choate v. Kimball,* 56 Ark. 55, 19 S.W. 108 (1892)). With respect to the third element, the Arkansas Supreme Court has explained:

> [W]e have stated that the intention is inferred from the nature of the chattel, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose for which the annexation has been made. *Corning Bank [v. Bank of Rector,* 265 Ark. 68, 576 S.W.2d 949, 952-953 (1979)], This Court has stated that the intention of the person making the annexation is a consideration of primary importance. *Farmers [Union] Mutual Ins. Co. v. Denniston,* 237 Ark. 768, 376 S.W.2d 252 (1964). However, contrary to the assertion of the dissent, "courts apply an *objective* test and arrive at the annexer's intention by looking to his outward acts rather than to the inner workings of his mind." *Id.* (emphasis supplied).

For examples of Arkansas cases addressing the issue of mobile homes as fixtures, see *Pledger v. Halvorson,* 324 Ark. 302, 921 S.W.2d 576 (1996) (finding that mobile home retained its character as personal property subject to the gross receipts tax); *Farmers Union Mutual Ins. Co. v. Denniston,* 237 Ark. 768, 376 S.W.2d 252 (1964) (finding house trailer was not permanently affixed to real estate).

assuming a mobile home is affixed to real property, is perfection of a security interest in such a mobile home governed by Arkansas' vehicle titling statute, or basic principles of real property mortgage law?

■ Generally, mortgages are effective to secure property affixed to the mortgaged land. *See McIlroy Bank & Trust Fayetteville v. Federal Land Bank of St. Louis*, 266 Ark. 481, 585 S.W.2d 947, 948 (1979) (Court found that mortgage secured dairy equipment affixed to the mortgaged real property). " 'The general rule is that the lien of a mortgage of realty embraces whatever is annexed to the land in such manner as to become in contemplation of law, part and parcel thereof.' " *Id.* (*quoting Triumph Electric Co. v. Patterson,* 127 C.C.A. 612, 211 F. 244 (1914)). Accordingly, it is clear that a mortgage would normally be effective to perfect a security interest in affixed personal property such as a mobile home.

■ However, mobile homes are subject to Arkansas' vehicle titling statute which requires that liens be noted on a vehicle's certificate of title in order to be perfected. *See General Electric Credit Corp. v. McCoy (In re Frontier Mobile Home Sales)*, 635 F.2d 726, 728 (8th Cir.1980) (concluding that notation of lien on certificate of title is the correct means of perfecting a security interest in a mobile home); *Rex Financial Corp. v. Marshall,* 406 F.Supp. 567 (W.D.Ark.1976) (holding that Arkansas law specifically makes mobile homes subject to the titling statutes and the general provisions dealing with the filing of liens and encumbrances upon vehicles subject to registration) (decisions under prior law but substantively identical to current law). Specifically, Ark.Code Ann. § 27–14–801 provides:

> No conditional sale contract, conditional lease, chattel mortgage, *or other lien or encumbrance* or title retention instrument upon *a vehicle, of a type subject to registration under the laws of this state other than a lien dependent upon possession,* is valid as against the creditors of an owner acquiring a lien by levy or attachment or subsequent purchasers or encumbrances, with or without notice, until the requirements of this subchapter have been complied with.

(Emphasis added). Section 27–14–807(a) then provides:

> The methods provided in this subchapter of giving constructive notice of a lien or encumbrance upon a registered vehicle *shall be exclusive* except as to liens dependent upon possession.

(Emphasis added). The Arkansas Supreme Court has held that the statutory method of giving notice of a lien under the vehicle titling statute is exclusive. *See Bank of Dardanelle v. Bibler Brothers,* 244 Ark. 534, 537, 426 S.W.2d 152, 153 (1968) (holding that filing a chattel mortgage with the county clerk is ineffective to perfect a security interest in a semi-trailer).

Section 27–14–703 makes it clear that a mobile home is a "vehicle subject to registration" within the meaning of the statute. That section provides:

> Every motor vehicle, trailer, semitrailer, and pole trailer when driven or moved upon a highway *and every mobile home* shall be subject to the provisions of this chapter . . .

(Emphasis added). In fact, Arkansas' vehicle titling statute was amended in 1973 to specifically provide that mobile homes are subject to the vehicle titling statute. Section 4 of the Acts 1973, No. 596 states:

> The purpose of this Act is to subject mobile homes to the provisions of Act 142 of 1949 as amended, in order to remove doubt and uncertainty as to the application of the Act to that class of vehicle.

Moreover, prior versions of the vehicle titling statute provided that its perfection requirements applied only to vehicles actually registered rather than those vehicles "subject to registration." *See* Ark.Code Ann. § 75–160 (1951) (predecessor to current Ark.Code Ann. § 27–14–801); *U.S. v. Westmoreland Manganese Corp.*, 134 F.Supp. 898, 947 (E.D.Ark.1955) (decision under prior law) ("As we construe [§ 75–160(a)], in order for a judgment creditor to obtain the benefit thereof, as against a mortgagee, it must appear that the vehicle in question was, in fact, registered at the time such creditors obtained a levy of execution thereon."). No longer is there a limitation that the statute will not apply unless the vehicle is actually required to be registered; rather, mobile homes are "subject to registration" despite the fact that owners of mobile homes are not required to register a mobile home or obtain a certificate of title for a mobile home. *See* Ark.Code Ann. § 27–14–1602 (*permitting* owners of mobile homes to license them and obtain certificates of title).[3]

Arkansas' vehicle titling statute does not provide an exception for mobile homes which are permanently affixed to real estate. Section 27–14–703 provides six exceptions to the statute's requirements; none of the listed exceptions exempt permanently affixed mobile homes from the titling statute. Furthermore, the definition of "mobile home" provided by § 27–14–207(f) does not except those mobile homes which are permanently affixed to real estate. Rather, that definition provides:

"Mobile home" means every house trailer or other vehicle, with or without wheels, designed for use as living quarters, *either permanent or temporary,* and, *at the time of manufacture, capable of being towed or otherwise transported or drawn upon a highway.*

(Emphasis added.) This definition makes no distinction between mobile homes that serve as permanent or temporary residences, or mobile homes that are still in fact mobile, and those that are not. Accordingly, given the definition of a mobile home under the statute, a mobile home may be both a fixture and still a "mobile home" subject to the statute. In other words, whether something is a fixture under state law does not necessarily change its fundamental character such that a vehicle titling statute would not apply to it. Arkansas' vehicle titling statute is pervasive and comprehensive leaving little, if any, room for exceptions not specifically stated. Accordingly, under the statute, mobile homes, whether affixed to real property or not, are clearly "subject to registration" such that a lien is not perfected on a mobile home unless the requirements of the vehicle titling statute have been met. *See* Ark.Code Ann. § 27–14–801.

■ Having stated the general rule that mortgages are generally sufficient to perfect fixtures on real estate, and having concluded that Arkansas' vehicle titling statute applies to mobile homes, whether affixed or not, and that the vehicle titling statute provides the *exclusive* method of perfecting security interests in vehicles

---

**3.** Arkansas law has since been amended to provide that the manufacturer's certificate or original document of title on a manufactured home (as opposed to a mobile home as defined by Ark.Code Ann. § 27–14–1601) may be surrendered to the DFA for cancellation if the manufactured home is affixed to real estate. *See* Ark.Code Ann. § 27–14–1603. Be-

cause there is no cross reference between this code section and the code sections concerning perfection of security interests in vehicles, including mobile homes, it is impossible to determine from the plain language whether this code section's intended purpose is to affect perfection requirements.

subject to the statute, the Court turns to which controls: general principles of real property law or the vehicle titling statute. Under Arkansas law, "[t]he rule is well settled that a general statute must yield when there is a specific statute involving the particular matter." *Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 602, 29 S.W.3d 730 (2000). Accordingly, the vehicle titling statute controls, and Defendant's mortgage on Debtors' real property is ineffective to perfect its security interest in Debtors' mobile home.

The Court's conclusion is consistent with both state and bankruptcy court cases which have examined the issue of how security interests in mobile homes are perfected under various state laws.[4] Most recently, the Sixth Circuit held that under Michigan law, a specific statute providing for perfection of security interests in mobile homes prevailed over the general rule that a security interest in a fixture can be perfected through a properly recorded mortgage on real estate. *Boyd v. Chase Manhattan Mortgage Corp. (In re Kroskie)*, 315 F.3d 644 (2003). In that case, the parties did not dispute that the mobile home at issue was affixed to the real property on which it sat. The Debtor owned both the mobile home and the real property and had refinanced both, granting the creditor a mortgage to secure the indebtedness. The bankruptcy court found that

Michigan's Mobile Home Commission Act provided the exclusive method for perfecting a security interest in a mobile home, whether affixed or not. The District Court reversed, holding that Michigan's statute providing for perfection of security interests in mobile homes is not exclusive, but that alternative methods of perfecting security interests as recognized by the UCC are applicable to mobile homes such that a recorded mortgage on the subject real estate is effective to perfect a security interest in the mobile home. The Sixth Circuit reversed the District Court, agreeing with the Bankruptcy Court's reasoning. However, the dissent agreed with the District Court's analysis, primarily because the Michigan law at issue provided that perfection under that statute is equivalent to filing a financing statement under the UCC, and the UCC itself is not exclusive in that it expressly recognizes the validity of mortgage liens.

The *Kroskie* facts are very similar to the ones before this Court. The Debtors own both the mobile home and real property on which it sits; the Debtors refinanced both with one creditor who took a single mortgage on the property and recorded it with the County Clerk's office. Like Michigan, Arkansas has a statute that provides for perfection of a security interest in a mobile home and defines mobile homes as "permanent or temporary." However, unlike Michigan, Arkansas' statute expressly pro-

---

4. *In re Gray*, 40 B.R. 429 (Bankr.W.D.Okla. 1984), provides a comprehensive discussion of cases involving the perfection of mobile homes under vehicle titling statutes and the UCC. The majority of cases reviewed by this Court do not involve mortgages, but priority between a security interest noted on a certificate of title and a filed UCC financing statement. *See e.g., In re Reed*, 147 B.R. 571 (D.Kan.1992); *In re Gray*, 40 B.R. 429. In general, the outcome depends solely on whether the statute at issue provides an exclusive method for perfection of security inter-

ests (*i.e.*, requiring notation of lien on certificate of title) and whether such statutes apply to mobile homes. The last question often involves an analysis of whether the exclusive method of perfection applies only to vehicles which must be registered or titled or both. *See In re Reed*, 147 B.R. at 573–574 (explaining that Kansas' vehicle titling statute requires nonhighway vehicles to be titled but not registered). As explained above, in Arkansas, the method of perfection applies to all vehicles "subject to registration," not only those which must be registered.

vides that the perfection methods provided are exclusive; there is no provision in Arkansas equating perfection under the vehicle titling statute to filing a financing statement under the UCC. Accordingly, the Bankruptcy Court and Sixth Circuit's analysis in *Kroskie* apply to this case with even greater force—the specific statutory method for perfecting an interest in a mobile home controls over the general real property law that a recorded mortgage also perfects an interest in affixed personal property.

Finally, as a practical matter, it only makes sense that perfection of an interest in a mobile home should be controlled by the vehicle titling statute rather than real property laws. Although this decision does not reach the issue of when a mobile home becomes affixed to real property, the Court has reviewed the applicable case law, and the determination of whether a mobile home has become affixed to real property involves a careful consideration of the facts in each case—it would be virtually impossible for a creditor to know with any certainty whether a particular mobile home would be considered a fixture or not, especially since the owner's intent is such a critical factor. *See Pledger v. Halvorson*, 324 Ark. 302, 921 S.W.2d 576 (1996); *Farmers Union Mutual Ins. Co. v. Denniston*, 237 Ark. 768, 376 S.W.2d 252 (1964). Requiring mobile home liens to be noted on the certificate of title provides centralized notice of the lien to all creditors thereby eliminating the need for creditors to make complex legal decisions in order to perfect their liens. The Kansas District Court's summary of the reasons why perfection of a mobile home makes more sense under a vehicle titling statute than under the UCC also applies to the conflict between vehicle titling statutes and mortgages presented in this case:

> As a practical matter, if mobile homes were subject to fixture filing requirements, a secured party with an interest in a mobile home could only maintain priority by making a new fixture filing every time the mobile home is moved. In today's mobile society, a secured party would be under an enormous burden to continuously monitor the whereabouts of the mobile home. By [the vehicle titling statute] governing the exclusive methods of perfection, the secured party is perfected with only one filing no matter where the mobile home is located.

*In re Reed*, 147 B.R. at 572 (*quoting Beneficial Finance Co. v. Schroeder*, 12 Kan. App.2d 150, 737 P.2d 52, *rev. denied*, 241 Kan. 838 (1987)).

In conclusion, the Defendant's security interest in the Debtors' mobile home is unperfected. The Defendant failed to have its lien noted on the mobile home's certificate of title and relied instead on a mortgage it filed on the Debtors' real property. Even if the Debtors' mobile home were affixed to the real property on which it sits (which the Court does not decide), the mortgage securing the debt owed Defendant does not serve to perfect the Defendant's security interest in Debtors' mobile home. Because the Defendant's security interest is unperfected, it is avoidable by the Trustee pursuant to § 544.

### The ATV

■ The Trustee also seeks to avoid a lien on an all-terrain vehicle ("ATV") owned by the Debtor in which the Defendant has a security interest, and to sell the ATV free and clear of all liens. The Trustee argues that the Defendant's lien is unperfected because it was not filed with the DFA and does not appear on the ATV's certificate of title. The issue to be decided is whether the Defendant perfected its lien on the ATV in a manner other than that provided for by Arkansas' vehi-

cle titling statute. However, before reaching that issue, the Court must first rule on the Trustee's evidentiary objection. In this case, the Court finds that good cause exists to receive into evidence the certified file-marked copy of the UCC financing statement. The parties did not dispute that the failure to provide this document earlier was inadvertent. Furthermore, if the Trustee had received the file-stamped document earlier, the opportunity to prepare based on its admission would not have reaped benefits. Whether a file stamped document exists is not subject to cross-examination or the presentation of additional witnesses or testimony which could change the outcome of the case. Accordingly, the Court overrules the Trustee's objection and accepts the certified file-marked UCC financing statement into evidence.

■ This Court recently held in *In re Burton,* No. 03–ap–1064, 2003 WL 21698752 (Bankr.E.D.Ark. July 15, 2003), that an ATV is considered a motor vehicle for purposes of perfecting a lien on an ATV, and that a lien must be filed with the DFA and noted on the ATV's certificate of title to be properly perfected. In *Burton,* the Court decided that an ATV is a "motor vehicle" subject to the perfection requirements of Arkansas' vehicle titling statute pursuant to Ark.Code Ann. §§ 27–14–801 *et seq.* (discussed above) and 27–20–201 *et seq.* (providing for registration of three-wheeled or four-wheeled all-terrain cycles).

In holding that ATVs are subject to the perfection requirements applicable to motor vehicles, the Court distinguished the language in Ark.Code Ann. § 27–21–103 which does not require an ATV to be "registered as a motor vehicle, motorcycle, or motor-driven cycle." *Id.* at *1. In *Burton,* the Court concluded that the latter code provision only operated to exempt ATVs from registration for purposes of operation on the public streets and highways, *not* for purposes of lien perfection. *Id.* at *2. This is consistent with the stated purpose of the chapter on ATVs as provided by Ark.Code Ann. § 27–21–101 which provides:

> It is the intent and purpose of this chapter to regulate the use of recreational all-terrain vehicles by restricting their use on the public streets and highways of this state. This law seeks to ensure the safety and general welfare of the citizens of Arkansas by limiting the situations where all-terrain vehicles are permitted to be used in a dangerous and unsafe fashion.

In sum, the Court found that the perfection of a lien on an ATV is governed by the provisions of Arkansas' vehicle titling statute as a vehicle subject to registration pursuant to Ark.Code Ann. § 27–20–201 *et seq.*

■ Notwithstanding the Court's decision in *Burton,* the Defendant argues that while filing a lien with the DFA and causing such lien to be placed on a certificate of title is one way to perfect a security interest in an ATV, such a security interest may also be perfected by filing a financing statement under the UCC. This is not so. As adopted in Arkansas, the UCC provides, in part:

> (a) Except as otherwise provided in subsection (d), the filing of a financing statement is not necessary *or effective* to perfect a security interest in property subject to:
>
> · · ·
>
> (2) any other laws of this state which provide for central filing of security interests or which require indication on a certificate of title to property of such interest, including but not limited to Ark.Code Ann. § 27–14–801—27–14–807; . . .

Ark.Code Ann. § 4–9–311 (effective July 1, 2001) (emphasis added). As explained above, and more specifically in *Burton*, the perfection of a lien on an ATV is subject to the requirements of Ark.Code Ann. § 27–14–801—27–14–807. Consequently, the filing of a UCC financing statement is ineffective to perfect a security interest in an ATV, and the Defendant's lien is avoidable by the Trustee pursuant to § 544.

## CONCLUSION

Mobile homes are subject to Arkansas' vehicle titling statute, whether affixed to real property or not. As such, the Defendant's lien on Debtors' mobile home is unperfected because Defendant did not comply with the requirements of the vehicle titling statute and have its lien noted on the mobile home's certificate of title. Likewise, ATVs are subject to Arkansas' vehicle titling statute, and Defendant's lien on Debtors' ATV is unperfected due to Defendant's failure to have its lien noted on the ATV's certificate of title. Pursuant to § 544, the Trustee may avoid these unperfected liens as a hypothetical judgment lien creditor and sell the Debtors' mobile home and ATV free and clear of all liens. For the reasons stated herein, it is hereby

**ORDERED** that judgment is awarded in favor of the Trustee/Plaintiff.