Heulon BARRON *v.* Dorothy Ray BARRON

CA 80-522                    615 S.W. 2d 394

Court of Appeals of Arkansas
Opinion delivered May 13, 1981

*Bill W. Bristow*, for appellant.

*William B. Howard*, for appellee.

LAWSON CLONINGER, Judge. Appellee Dorothy Ray Barron was granted an uncontested divorce from appellant Heulon Barron on September 5, 1980, and appellant prosecutes this appeal from the trial court's ruling that (1) appellee was not responsible for one-half of an income tax liability, (2) appellant was not entitled to recover one-half of the value of four grain bins and a shop building, and (3) appellant was not entitled to one-half of the funds alleged by appellant to be in a joint checking account at the time of separation.

We do not find any of the trial court's rulings to be in error and we affirm.

Appellant and appellee were married in February, 1974 and separated in November, 1979. It was not the first marriage for either party, and each brought property to the marriage. Appellee had a life estate in 450 acres of land and 91 acres in her own name; appellant had a large amount of tools and farm equipment. Appellee gave appellant a fifteen-year lease on her property, which appellant released at the time of the separation. During the marriage, a joint account was opened by the parties, and from that joint account was purchased, among other things, additional farm equipment used by appellant, grain storage bins and a shop building which were erected on the land in which appellee was a life tenant, and two acres of land with a house on it. The couple also jointly purchased several house trailers which were placed upon the two acres and rented. When appellant left appellee, he took numerous items of person-

alty with him, and the testimony of the parties regarding what was taken is in sharp conflict.

The property of each was freely intermingled with marital property, and that intermingling, coupled with the lapses of memory sometimes suffered by the parties, made it virtually impossible for the trial court to make a proper division of the property between the parties; e.g., appellant clearly remembered that he had taken twelve quarts of motor oil when he left, but he could not remember what a $20,511.56 check written on the joint account a few days before or after the separation was for. Appellee recalled that appellant had taken a $6.00 stove from their joint property, but she forgot what a $7,557.33 check written upon the joint account just after the separation was for.

The parties agreed that it would not be necessary for the trial court to itemize and evaluate each item of property awarded to the parties, nor would it be necessary for the court to cite any of the eight considerations for division of property other than an equal division as set out in Ark. Stat. Ann. § 34-1214 (Supp. 1979).

In February, 1979, during one of the several separations of the parties, appellant, without consulting appellee, sold the farm equipment at auction. Appellant testified that the sale brought a total of $138,000, which he used to pay the joint debts of the parties. The parties had filed joint federal and state income tax returns during the five years of their marriage, but appellee refused to file a joint return for the year 1979. Appellant discovered early in 1980 that the auction sale had a tax consequence he had not been previously aware of; some of the farm equipment sold had been depreciated out in prior years, and income taxes were now owing on the excess the equipment brought over the amount shown on the depreciation schedule. The tax liability was in excess of $27,000. Appellant argued in the trial court, and urges here on appeal, that appellee should be liable for one-half of the tax liability. The trial court found that the tax liability was the separate obligation of the appellant, and we are not in a position to say that the finding was incorrect. The allegation of appellant that the tax liability resulted

from depreciation on joint property claimed on the joint return of the parties in prior years is not supported by the record. Appellant treated the farm equipment as his sole property when he unilaterally sold it, and there is no evidence, except his statement, that the proceeds of the sale were used for the payment of joint debts. Appellant's 1979 tax return is not abstracted, and the couple's joint returns for years prior to 1979 were not offered in evidence. The trial court was left to speculate as to the reason for any tax liability on the part of appellant. The trial court's ruling on this point is not clearly against the preponderance of the evidence and will not be disturbed.

The trial court found that grain storage bins and a shop building placed by appellant on land in which appellee held a life estate were permanently affixed to real property not owned by either party, and that neither party has a right to remove them. Appellant's claim that the grain bins and shop building are personalty is not supported by the evidence. The grain bins have a 3300-bushel capacity, and were set in deep concrete, as was the shop building. Three of the grain bins and the shop building were purchased with joint funds of the parties; the fourth grain bin belonged to appellee, and was moved and reassembled on its new location by the appellant. Appellant testified that the bins could be moved, but admitted that the cost of moving and reassembling the one he had moved cost about as much as a new one.

The only Arkansas case cited by appellant to support his view is *Corning Bank* v. *Bank of Rector*, 265 Ark. 68, 576 S.W. 2d 949 (1979), which held that the question of whether a particular property constituted a fixture was sometimes one of fact only, but usually a mixed question of law and fact. The Court held that the chancellor's finding that grain bins having a capacity of 7,000 bushels and impractical to move constituted a fixture was not against the preponderance of the evidence. In discussing a rule as to trade fixtures as contrasted to fixtures which became a part of the realty, the Court said:

> ... trade fixtures are articles erected or annexed to realty by a *tenant* for the purpose of carrying on a trade, and

removable by him during his term (provided the removal does not affect the essential characteristics of the article moved or reduce it to a mass of crude materials) upon grounds of public policy ands because, from the nature of the tenure, they are not presumed to have been annexed with the intention of making them permanent additions to the realty.

The *Corning Bank* case appears to support the finding of the trial court in the instant case that the bins and shop building were not trade fixtures but were fixtures which became a part of the realty. It was shown in the *Corning Bank* case and in the instant case that the fixtures could have been moved piece by piece to another location, but that moving them would not be practical. In the instant case there is the further consideration that there was evidence presented that the fixtures could not be moved without doing injury to the realty of one not a party to the action. We are unable to say that the trial court's finding that the property involved here constituted fixtures attached to the realty is clearly against the preponderance of the evidence.

In addition to its findings in regard to the tax liability and the fixtures, the trial court ordered the sale of the two-acre tract along with the house trailers and a share of stock held jointly by the parties, with the proceeds to be equally divided between the parties. The Court stated that it considered it to be equitable, and so ordered, that the remainder of the personal property in the possession of each of the respective parties should become the absolute property of the person possessing the same. There was no specific provision regarding the joint bank accounts of the parties, and it is appellant's claim that he is entitled to one-half the funds in the account at the time of separation. Appellant alleges that there was a balance of $8,000 in the account at the time of separation, but the record does not reveal the date of separation. Both parties allege that the separation was in the "latter part of November, 1979," but appellant testified at one point that the separation was about the middle of November. The account is not abstracted, but even an examination of the transcript does not make the rights of the parties clear. The transcript shows that there was a balance of $2,722.02 in

the account on November 15, 1979; that deposits of $26,000 and $1,317.41 were made on November 27, 1979; that checks were written, or cleared the bank, in such amounts as to reduce the account to $7,545.67 on November 30, 1979. Appellee's uncontradicted testimony indicates that she took $26,000 from her separate account, which she deposited to the joint account on November 27, 1979, to pay joint obligations of the parties. On December 3, 1979, a check in the amount of $7,557.33 cleared the bank, leaving the joint account slightly overdrawn. Appellant states that he did not write the check, and appellee does not remember it. The check itself was not offered into evidence by either party. In such a confused state of the testimony, we cannot say the ruling of the trial court is clearly erroneous. The trial court, in fact, would have been justified in drawing an inference that appellee made the only deposits which were made after the separation from her separate funds, and that the only checks written after the separation were in payment of joint obligations of the parties.

Rule 52 of the Arkansas Rules of Civil Procedure provides that findings of fact by a trial court shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. The trial court's findings in the case before the Court are not clearly erroneous or clearly against the preponderance of the evidence as to any of the points urged by appellant, and its decision will not be disturbed.

Affirmed.

CORBIN and GLAZE, JJ., agree with the majority opinion except that they would reverse and remand, finding the parties' checking account is marital property and directing the trial court to hold a further proceeding to insure each party receives his respective one-half interest in the $7,545,67.