Don ADAMSON *v.* Jimmy B. SIMS, As Trustee of the Jimmy B. Sims Farm, Inc., Pension Trust

CA 03-840 151 S.W.3d 23

Court of Appeals of Arkansas
Division III
Opinion delivered March 3, 2004

*Gill Elrod Ragon Owen & Sherman, P.A.*, by: *W.W. Elrod, II* and *Matthew B. Finch*, for appellant.

*Holleman & Associates, P.A.*, by: *John T. Holleman, IV* and *Stacey D. Fletcher*, for appellee.

JOHN MAUZY PITTMAN, Judge. Following a bench trial, appellant Don Adamson was held liable for conversion of an airplane hangar that the Jimmy B. Sims Farm, Inc., Pension Trust claimed to own. The Trust was awarded $10,000 in compensatory damages. On appeal, appellant argues that the trial court erred in finding him liable for conversion. We agree and reverse and remand.

The hangar in question was located on the Cottonwood Plantation in Lonoke County. It was constructed approximately thirty years ago by John McRae for the purpose of housing his personal airplane. In June 2001, McRae decided to sell his airplane. He contacted appellant and orally conveyed the hangar to him in exchange for appellant's repairing and selling the plane. Appellant's plan was to disassemble the hangar, move it to his own airstrip, and erect it there. He expected it to cost him $3,000.

On August 31, 2001, appellee purchased the Cottonwood Plantation from the Mary S. Pemberton Trust for approximately two million dollars. The purchase price included all attached fixtures and equipment. Trustee Jimmy Sims would later testify that he understood the price to include the hangar; he apparently had no knowledge that McRae had sold the hangar to appellant.

In late December 2001, appellant and several other workmen arrived at the Plantation with lifting equipment, a trailer, and other tools and began dismantling the hangar. However, after the structure had been partially disassembled, Jimmy Sims protested, claiming that the hangar was owned by appellee. Appellant eventually left the hangar partially torn down.

On March 27, 2002, appellee sued appellant for trespass and for conversion of the hangar, and appellant counterclaimed for conversion of the hangar. The trial court ruled in appellee's favor on the conversion count and awarded it $10,000 in damages. Appellant appeals from that verdict.

When a case is tried by a circuit court sitting without a jury, our inquiry on appeal is whether the trial court's findings are clearly erroneous, or clearly against the preponderance of the evidence. *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003). Recognition must be given to the trial judge's superior opportunity to determine the credibility of the witnesses and the weight to be given to their testimony. *Gosnell v. Independent Serv. Fin., Inc.*, 28 Ark. App. 334, 774 S.W.2d 430 (1989).

The key issue on appeal is whether the hangar is a fixture. If it is a fixture, it is owned by appellee by virtue of its purchase of the Cottonwood Plantation; if it is not a fixture, it is owned by appellant as his personal chattel. The trial court determined that the hangar was a fixture based on the following findings: 1) John McRae was a beneficiary of the Pemberton Trust and constructed the hangar for the Trust's benefit; 2) the hangar was affixed and annexed to the Plantation realty; 3) there was no agreement between McRae and the Pemberton Trust as to ownership of the hangar.

Appellant first challenges the trial court's finding that McRae constructed the hangar for the benefit of the Pemberton Trust. This finding was made by the court *sua sponte*, relying on the case of *Corning Bank v. Bank of Rector*, 265 Ark. 68, 576 S.W.2d 949 (1979). Appellant argues that the trial court's finding is erroneous on this point, and we agree.

The court's finding was based on testimony by Joe Pennington, the farm manager for the Pemberton Trust, that McRae was a "minority" beneficiary of the Trust and had managed the Plantation sometime before 1998. However, no further evidence was adduced regarding McRae's relationship to the Pemberton Trust or any benefit that the Trust enjoyed in the hangar. By contrast, there was considerable evidence that the hangar had not been constructed for the Trust's benefit. McRae, who did not testify at trial, signed a written memo on March 1, 2002, in which he stated that he had personally paid for the hangar and had built it "over twenty years ago for $9,000." Pennington testified that McRae had constructed the hangar thirty years earlier for storage

of McRae's airplane; that it was Pennington's understanding that the hangar was not the Pemberton Trust's property; that McRae had insured and maintained the hangar; that Pennington never expended any Trust money to maintain the hangar and did not insure it, although the Trust insured other buildings on the Plantation; that the Pemberton trustee, Marilyn Houston (McRae's sister) was aware that the Trust was not insuring the hangar; and that the trustee never instructed Pennington to exercise any dominion or control over the hangar. On January 4, 2002, after the controversy in this case began, Pennington wrote a letter to appellee stating that the hangar had been paid for thirty years ago by McRae, was used to shelter McRae's airplane, and that insurance coverage for the hangar was paid for by McRae and "not included under the farm's other insurance coverage."

The evidence points inescapably to the conclusion that McRae, Pennington, and the trustee were all of the opinion that the hangar belonged to McRae and was of no interest to the Trust. The trial court therefore erred in finding that the hangar was built for the Trust's benefit.[1]

As for the trial court's reliance on the *Bank of Corning* case, we believe it is not well founded in this instance. *Corning* involved the question of whether certain grain bins were fixtures on real property. In holding that they were, the supreme court stated that the inference that a structure is a fixture is strong "where the party attaching the 'fixture' is the owner of the soil." *Id.* at 74, 576 S.W.2d at 953. The court in the case at bar must have considered McRae an "owner of the soil" by virtue of his being a beneficiary of the Trust. Although a trust beneficiary may have an equitable interest in trust property, *see generally* 76 Am. Jur. 2d *Trusts* § 281 (2d ed. 1992), in this case, we do not know the terms of the trust nor the extent of McRae's interest; we know only of Pennington's understanding that McRae was a "minority" beneficiary. Given the lack of evidence on this matter, the language in *Corning* was not applicable.

---

[1] Appellee contends that appellant's argument on this point is barred because appellant failed to make a specific directed verdict motion at the close of the plaintiff's case and at the close of all evidence. However, our rules of civil procedure do not require such motions to challenge the sufficiency of the evidence when there has been a bench trial. *See* Ark. R. Civ. P. 50(e) (2003); *FirstBank of Arkansas v. Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993).

We turn now to appellant's argument that the trial judge erred in characterizing the hangar as a fixture. The question of whether particular property constitutes a fixture is sometimes one of fact only but usually is a mixed question of law and fact. *Corning Bank v. Bank of Rector, supra.* A fixture has been defined by our supreme court as property, originally a personal chattel, that has been affixed to the soil or to a structure legally a part of the soil and, being affixed or attached to the realty, has become a part of the realty. *See Continental Gin Co. v. Clement,* 176 Ark. 864, 4 S.W.2d 901 (1928). It is annexed to the freehold for use in connection therewith and so arranged that it cannot be removed without injury to the freehold. *See id.* The courts have devised a three-part test to determine whether an article is a fixture: (1) whether it is annexed to the realty; (2) whether it is appropriate and adapted to the use or purpose of that part of the realty to which it is connected; (3) whether the party making the annexation intended to make it permanent. *See Pledger v. Halvorson,* 324 Ark. 302, 921 S.W.2d 576 (1996). The third factor — the intention of the party who made the annexation — is considered of primary importance. *Id.; Kearbey v. Douglas,* 215 Ark. 523, 221 S.W.2d 426 (1949). The courts use an objective test to arrive at the annexer's intention. *See Pledger v. Halvorson, supra.*

On the first factor, there is proof on both sides as to whether the hangar was annexed to the realty. The evidence shows that the hangar was a large building constructed of metal trusses with two-by-four girds and purlins and metal siding attached to the wood with nails. The structure was bolted to a concrete slab, although the slab covered only a part of the surface of the hangar. Jimmy Sims testified that it would be difficult to move the structure without completely damaging it. On the other hand, appellant said that he had no doubt about being able to move the hangar, and he said that he could move it without damaging the real property. He testified that the metal trusses were bolted into concrete footers and that, after removing the outside sheeting, he could remove the trusses by holding them with a cherry picker and unbolting them. At the time he was ordered off the property, he and his crew had worked about nine hours dismantling the building. At that point, he had removed about three-fourths of the sheeting from the roof and half from the walls.

Our courts have decided several cases on the issue of whether large structures are fixtures or personalty, and the outcome of those cases has depended upon their particular facts. A structure was held to be a fixture in *Corning Bank v. Bank of Rector, supra,* where an expert opined that it would be impractical to remove 22-foot-by-21-foot grain bins with 7,000-bushel capacities attached to the ground by 12-foot deep footings. A structure was also ruled a fixture in *Dobbins v. Lacefield,* 35 Ark. App. 24, 811 S.W.2d 334 (1991), where a canopy was set in concrete with underground cables and gasoline tanks were placed in 20-foot-by-30-foot holes that were 10 feet deep and could be removed only by a backhoe, and in *Barron v. Barron,* 1 Ark. App. 323, 615 S.W.2d 394 (1981), where grain-storage bins and a shop building were set in deep concrete and the cost of moving and reassembling a new bin would cost as much as buying a new one. In contrast, mobile homes were held not to be fixtures in *Pledger v. Halvorson, supra,* even though they had been placed on concrete foundations with extensive modifications and had no tongues, axles, or wheels. In addition, *see Garmon v. Mitchell,* 53 Ark. App. 10, 918 S.W.2d 201 (1996), holding that grain bins were not fixtures, and *Farmers Mutual Insurance Co. v. Denniston,* 237 Ark. 768, 376 S.W.2d 252 (1964), holding that a house trailer was not a fixture. *See also In re Hot Shot Burgers & Fries, Inc.,* 147 B.R. 484 (E.D. Ark. 1992), ruling that a fast-food building constructed from prefabricated modules was not a fixture.

We distinguish this case from those cited above in which large structures were held to be fixtures. In each of those cases, strong evidence of the annexing party's intention to treat the structure as chattel was lacking. In the case at bar, there was considerable evidence, as set out earlier in this opinion, that McRae, the annexing party, intended to treat the structure as personalty. Further, there was equally strong evidence that the owner of the realty, the Pemberton Trust, shared that intention. Thus, the third factor in the test, which is the factor of primary importance, operates in favor of appellant. As in *Pledger v. Halvorson, supra,* the intention of the parties, being the crucial consideration, should govern.

The second factor in the fixture test also works in favor of appellant. Although the hangar was contiguous to an airstrip that was owned by the Pemberton Trust, there is no evidence that the hangar or airstrip was used in connection with Trust business

or that the Trust derived any significant benefit from them. In fact, the airstrip was leased by McRae for the minimal amount of $600 per year.

In light of the foregoing, we reverse the trial court's decision and hold that the hangar was not a fixture. Our decision makes it unnecessary to reach appellant's third argument, that the trial court used an incorrect measure of damages.

Reversed and remanded with directions to enter a finding that the hangar is not a fixture and that it is the property of appellant.

GLADWIN and BAKER, JJ., agree.