Cite as 2022 Ark. App. 108

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-42

| | |
|---|---|
| ST. JOSEPH'S UTILITY OPERATING COMPANY, LLC<br><br>APPELLANT<br><br>V.<br><br>ALEXANDER MUNICIPAL PROPERTY OWNERS' MULTIPURPOSE IMPROVEMENT DISTRICT NO. 43; ALEXANDER MUNICIPAL PROPERTY OWNERS' MULTIPURPOSE IMPROVEMENT DISTRICT NO. 86; AND ST. JOSEPH'S GLEN PROPERTY OWNERS ASSOCIATION<br><br>APPELLEES | **Opinion Delivered** March 2, 2022<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-12-1817]<br><br>HONORABLE GRISHAM A. PHILLIPS, JUDGE<br><br><br>REVERSED AND REMANDED |

## LARRY D. VAUGHT, Judge

Appellant St. Joseph's Utility Operating Co., LLC ("SJUOC"), and appellees Alexander Municipal Property Owners' Multipurpose Improvement District No. 43 ("District 43"); Alexander Municipal Property Owners' Multipurpose Improvement District No. 86 ("District 86"); and St. Joseph's Glen Property Owners Association (collectively "appellees"), filed cross-motions for summary judgment claiming ownership of sewer improvements within the subdivision of St. Joseph's Glen ("Subdivision") located in Alexander, Arkansas. The Saline County Circuit Court entered an order granting summary judgment to appellees and denying SJUOC's motion. SJUOC has appealed. We reverse and remand.

A. Jones Investments, LLC ("AJI"), was the original owner and developer of the Subdivision.[1] AJI also owned property adjacent to the Subdivision. In 2004, AJI purchased a wastewater treatment plant and pumping station to service the Subdivision from Tipton Environmental International, Inc. ("Tipton"). Tipton installed the sewer treatment plant on AJI's property ("Plant Property") adjacent to the Subdivision in May 2004. AJI paid for the purchase and installation of the sewer treatment plant.

The Subdivision was developed in seven phases. Between June 2004 and September 2005, AJI transferred title to all the developed lots in Phases 1, 2, 3, and 4; the unplatted property that would become Phases 5, 6, and 7; and the Plant Property to Josie Company, LLC ("JC"), a property-development and single-family-dwelling construction company. One of the members and officers of JC was Michele Stephens.

In December 2005, JC filed the plats for Phases 5 and 6 in the Subdivision and proceeded with constructing and selling homes on the lots. Between November 2006 and July 2007, by a series of warranty deeds, JC conveyed its interest in the Subdivision to a related entity, Stephens-Baker Development, Inc. ("SBDI").[2] SBDI filed a replat for Phase 6 and the final plat for Phase 7 of the Subdivision. In March 2011, JC conveyed the Plant Property to SBDI by warranty deed. On August 16, 2013, SBDI conveyed the Plant Property to WWTP

---

[1]Aaron Jones formed AJI.

[2]According to Stephens's affidavit, in 2006, she and her ex-husband formed SBDI, which was a property-development and a single-family-dwelling construction company. All the assets of JC were transferred to SBDI. Stephens was a shareholder and officer in SBDI.

I, LLC ("WWTP"),[3] by warranty deed. And in November 2017, WWTP conveyed the Plant Property to SJUOC by warranty deed.

District 43 is an improvement district formed by the City of Alexander Ordinance No. 10-04-03 on October 6, 2003. District 43 encompasses the land that represents Phases 1, 2, 3, 4, 5, and 6 of the Subdivision, less a small portion of Phase 6 that would later be included in District 86. Jones was one of the commissioners of District 43. District 43 was created

> for the purpose of constructing and installing facilities for waterworks, recreation, drainage, gas pipelines, underground trenches and excavations necessary for the installation of electric and telephone distribution systems, sanitary sewers, streets, including curbs and gutters, sidewalks, together with facilities related to any of the foregoing within the district.

Alexander, Ark., Ordinance 10-04-03 (Oct. 6, 2003). The "Notice of Levy" issued by District 43 to property owners on October 8, 2004, in accordance with the ordinance, stated that District 43 was formed "for the purpose of constructing and installing facilities for waterworks, recreation, drainage, gas pipelines, underground trenches and excavations necessary for installation of electric and telephone distributions systems, sanitary sewers . . . ."

District 43 issued three improvement bonds to finance improvements for Phases 1 through 6 of the Subdivision. On May 3, 2004, District 43 issued an improvement bond in the principal amount of $88,000 to fund improvements in Phase I, cost of issuance, and other preliminary expenses of the district. On September 29, 2004, District 43 issued an improvement bond in the principal amount of $152,000 to fund improvements in Phase 2, costs of issuance, and other preliminary expenses of the district. On August 3, 2005, District

---

[3]Stephens states in her affidavit that she and her ex-husband formed WWTP in 2012 and that she was a member and officer of WWTP.

43 issued an improvement bond in the principal amount of $440,000 to fund improvements in Phases 3–6, costs of issuance, and other preliminary expenses of the district.

District 86 is an improvement district formed by the City of Alexander Ordinance No. 2008-02 on June 16, 2008. District 86 encompasses a small area of Phase 6 and the entirety of Phase 7 of the Subdivision. District 86 was created

> for the purpose of constructing and installing facilities for waterworks, recreation, drainage, gas pipelines, underground trenches and excavations necessary for the installation of electric and telephone distribution systems, sanitary sewers, streets, including curbs and gutters, sidewalks, together with facilities related to any of the foregoing within the district.

Alexander, Ark., Ordinance 2008-02 (June 16, 2008). Section 4 of the District 86 ordinance states that "[t]he improvement district being formed shall continue in existence after acquiring, constructing, and completing the improvement(s) contemplated by the petitioners." This section further provides that "[p]ursuant to Ark. Code Ann. § 14-94-128, the improvement district shall continue to exist for the purpose of preserving, maintaining, and operating the improvement(s), replacing equipment, paying salaries to employments (sic) and performing any other functions or services authorized by law."

On August 15, 2008, District 86 issued an improvement bond in the principal amount of $147,690 for the purposes of financing the acquisition of public roads, storm water drains, and other public-infrastructure improvements to benefit the land within District 86 and paying the first two interest payments on the bonds.

In Jones's affidavit, he states that proceeds from bonds issued by the districts were used to pay a portion of the development costs of the Subdivision, including the water and sewer-collection system. He further states that the districts' bond proceeds accounted for

4

approximately $4,000 of the total development cost of $10,000 per lot. Stephens also states in her affidavit that some proceeds from bonds issued by the districts were used to complete the improvements in the Subdivision.

As noted above, in November 2017, WWTP conveyed the Plant Property on which the sewer treatment plant is located to SJUOC. WWTP also executed a bill of sale on November 3, 2017, in favor of SJUOC whereby WWTP sold its assets to SJUOC, which SJUOC alleges in its complaint included, among other things, all of WWTP's sewer-service facilities, equipment, lines, plant, pipes, manholes and appurtenances along with all other assets located in Saline County and used or are useful to operate the sewer system.

Also on November 3, 2017, SBDI issued a general assignment to SJUOC. The general assignment states that it is being entered into concurrently with SJUOC's purchase of the Plant Property "together with improvements located in the Subdivision" and certain other personal property referenced within the bill of sale between WWTP and SJUOC. The assignment further states:

> In order to assure that [SJUOC] obtains all rights, title, and interest to the assets and components of the Sewer System . . . including all easement interests that may be held in [SBDI's] name, [SBDI] has agreed to transfer to [SJUOC] all right, title, and interest in and to easements located on the Subdivisions.
>
> . . . .
>
> [SBDI] has agreed to assign to [SJUOC] all of [SBDI's] right, title and interest in and to any easements and other real property interests pertaining to or helpful in the provision of mainline sewer service in and to [the Subdivision] . . . .

The dispute in this case arose when Districts 43 and 86 sought to connect the sewer improvements within their districts in the Subdivision to the Little Rock Water Reclamation Authority. The sewer improvements include the sewer pipes, manholes, and appurtenances

5

located in the utility easements throughout the Subdivision. On August 31, 2018, SJUOC filed a declaratory-judgment action seeking a declaration that it is the owner of the sewer system serving the Subdivision, including the sewer improvements within Districts 43 and 86. Appellees answered and filed a counterclaim seeking their own declaration of ownership of the improvements. After SJUOC filed an answer to appellees' counterclaim, appellees filed a motion to strike SJUOC's answer and for default judgment. The parties later filed competing motions for summary judgment, and on October 6, 2020, the circuit court entered an order granting appellees' motion for summary judgment and denying SJUOC's motion for summary judgment.[4]

In its order, relevant to this appeal, the court made three findings: Districts 43 and 86 are the owners of the sewer improvements, SJUOC has no ownership interest in the sewer improvements, and Districts 43 and 86 are authorized by Arkansas Code Annotated sections 14-94-101 et seq. (Repl. 1998 & Supp. 2021) to carry the existing sewer infrastructure located within the districts to another system within or without the districts. On appeal, SJUOC argues that the circuit court erred in granting appellees' motion for summary judgment and in denying SJUOC's motion for summary judgment.[5]

---

[4]The circuit court also denied appellees' motion to strike answer to counterclaim and for default judgment. Appellees do not challenge these findings on appeal.

[5]Normally, we do not review an order denying a summary judgment because we have held that such an order, being interlocutory, is not appealable. *Wilson v. McDaniel*, 247 Ark. 1036, 1041, 449 S.W.2d 944, 947 (1970). However, certain interlocutory orders are reviewable in conjunction with a final judgment; an order granting a summary judgment is a final order and therefore appealable. *Id.*, 449 S.W.2d at 947. Because both parties claim ownership of the sewer improvements, it is necessary to discuss the circuit court's finding that SJUOC failed to establish as a matter of law that it owned the improvements.

Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *St. Francis River Reg'l Water Dist. v. City of Marmaduke*, 2021 Ark. App. 305, at 4, 626 S.W.3d 168, 170. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.*, 626 S.W.3d at 170–71. When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.*, 626 S.W.3d at 171. As to issues of law presented, our review is de novo. *Id.*, 626 S.W.3d at 171.

Further, we review issues of statutory interpretation de novo. *Id.*, 626 S.W.3d at 171. Our supreme court has directed that the basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* at 4–5, 626 S.W.3d at 171. In determining the meaning of a statute, our first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* at 5, 626 S.W.3d at 171. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id.* at 5, 626 S.W.3d at 171. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id.*, 626 S.W.3d at 171.

SJUOC's first argument on appeal is that the circuit court erred in granting appellees' motion for summary judgment because the court found that appellees own the sewer improvements. The court made the following findings in support of its decision: (1) the districts' bonds were used to pay a portion of the construction of the sewer improvements,

(2) the districts have not conveyed or otherwise transferred their interest in the improvements, (3) the districts still exist, and (4) the districts are authorized by Arkansas Code Annotated section 14-94-110 to take certain action with respect to the sewer improvements at issue that are "consistent with the ownership of the improvements."

The circuit court's first three findings are supported by the evidence. Jones, who owned AJI and was the original developer of the Subdivision, and Stephens, who was a member and/or officer of JC, SBDI, and WWTP, state in their affidavits that proceeds from bonds issued by the districts were used to pay a portion of the construction of the sewer system. There is no evidence in the record that the districts have conveyed or transferred their interest in the improvements. And it is undisputed that the districts still exist. Section 4 of the District 86 ordinance expressly provides that the improvement district shall continue in existence after acquiring, constructing, and completing the improvement and that the improvement district shall continue to exist for the purpose of preserving, maintaining, and operating the improvements, replacing equipment, paying salaries to employees, and performing any other functions or services authorized by law.[6] While District 43's ordinance does not contain this language, there is no evidence on this record that District 43 no longer exists.

---

[6] *See also* Ark. Code Ann. § 14-94-128 (Repl. 1998), which provides:

> If the petition for formation of the district provides therefor or the owners of real property in the district agree thereto, a district shall not cease to exist upon the acquiring, construction, or completion of the improvement, but it shall continue to exist for the purpose of preserving, maintaining, and operating the improvement, replacing equipment, paying salaries to employees, and performing any other functions or services authorized in this chapter.

8

However, these findings do not establish that the districts *own* the sewer improvements as a matter of law. The circuit court did make a fourth finding under this point: "Both District 43 and District 86 are also authorized by statute to take certain action with respect to the sewer improvements at issue, such authority and action being consistent with the ownership of the improvements." The statute is Arkansas Code Annotated section 14-94-110, which provides:

> (a) Any district, in furtherance of any of the purposes set forth in § 14-94-105, shall have the authority to hire managers and other employees and to pay their salaries incident to the operation and maintenance of any of the improvements authorized by this chapter. It shall also have the authority to acquire and purchase equipment and machinery incident to the operation and maintenance of these improvements and shall be further authorized to do any and all other acts which shall be deemed necessary in order to purchase, construct, accept as a gift, operate, and maintain any and all improvements authorized by this chapter.

> (b) Any district shall have the power to sell or lease any improvements owned by it to any nearby municipality or district or other improvement district within the nearby municipality serving on behalf of the property owners of the district or to any other person. The district may make contracts with any person, or it may operate any improvement and may connect any improvement with the improvements, systems, and transmission lines of any nearby municipality or other district or improvement district and, with respect to sewers, may carry its sewers to any proper outlet within or without the district.

Ark. Code Ann. § 14-94-110(a), (b) (Repl. 1998). Construing the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, there is no wording that conveys or grants ownership of improvements to a district on the sole basis that the district contributed a portion of the installation cost of the improvements.

We acknowledge that the language of the statute provides that the districts *can* own improvements: the statute expressly provides authority for the districts to not only purchase them but to also sell and lease improvements that they own. Ark. Code Ann. § 14-94-110(a), (b). The statute also grants authority to the districts "to do any and all other acts which shall

9

be deemed necessary in order to purchase . . . any and all improvements authorized by this chapter." *Id.*

An easement or right-of-way is an interest in land and must be conveyed by deed in the same manner as land is conveyed. *White v. Zini*, 39 Ark. App. 83, 87, 838 S.W.2d 370, 372 (1992). Generally, acts necessary to convey real property include the signing of documents. 23 Am. Jur. 2d *Deeds* § 1 (1965) (defining a deed as a written document that on its face conveys title or an interest in real property). The districts are authorized by statute to make contracts. Ark. Code Ann. § 14-94-110(b). But there is no evidence on this record that the districts did this. They have offered no evidence that they hold easements (or deeds or assignments) for the improvements and have not established or even alleged that they hold prescriptive easements to the improvements. Therefore, we hold that the circuit court erred in finding that as a matter of law the districts own the sewer improvements.

One final note on this point. The districts cite *Page v. Highway No. 10 Water Pipe Line Improvement District No. 1*, 201 Ark. 512, 515, 145 S.W.2d 344, 345 (1940), for the proposition that Arkansas courts have repeatedly held that an improvement district can exercise only such powers as it is authorized by statute to exercise; that is, those necessarily or fairly implied or incident to the powers expressly granted. They then contend that to the extent that the Municipal Property Owners' Improvement District Law does not expressly state that the districts own the improvements, "such ownership is necessarily or fairly implied and incident to the powers expressly granted."

In *Page*, the appellees' ownership of the improvement was not in dispute. Neither was the appellees' statutory authority to build the pipeline and then sell it. What the appellants'

10

disputed was the appellees' statutory authority to enter into a contract to sell the pipeline before it was built. *Id.* at 515, 145 S.W.2d at 345. Our supreme court held that if the statute contemplates that the improvement district can employ someone to build the pipeline and then sell it, it is implied in the statute that the district can enter into a contract to sell it before it has actually been constructed. *Id.*, 145 S.W.2d at 345.

We decline to conclude that Districts 43 and 86's statutory authorization to operate, maintain, sell, and lease the improvements "fairly implies" that they own the improvements without any other indicia of ownership. Assuming that implication could be made, such a conclusion cannot be resolved on summary judgment in this case. In *Page*, there was no dispute as to the owner of the improvements. The evidence showed that the district alone installed, or hired a contractor to install, the improvements. In contrast, ownership is the primary issue in this case. And while there are facts presented that the districts contributed funds to the construction of the sewer improvements, there are other facts presented that AJI, JC, and SBDI installed the improvements; paid for the majority of the improvements; and paid for the maintenance, repairs, and operation of the improvements thereafter. Therefore, we hold that on this record, it cannot be determined as a matter of law that Districts 43 and 86 own the sewer improvements.

SJUOC argues on appeal that the circuit court erred in finding that it failed to establish as a matter of law that it owns the sewer improvements. It contends that its ownership is established by WWTP's bill of sale that conveyed SJUOC the improvements. The circuit court

11

rejected this argument on the basis of its finding that the improvements are fixtures and therefore real property, and a bill of sale does not convey real property.[7]

The question of whether particular property constitutes a fixture is sometimes one of fact only but usually is a mixed question of law and fact. *Adamson v. Sims*, 85 Ark. App. 278, 284, 151 S.W.3d 23, 26 (2004). A fixture has been defined by our supreme court as property, originally a personal chattel, that has been affixed to the soil or to a structure legally a part of the soil and, being affixed or attached to the realty, has become a part of the realty. *Id.*, 151 S.W.3d at 26. It is annexed to the freehold for use in connection therewith and so arranged that it cannot be removed without injury to the freehold. *Id.*, 151 S.W.3d at 26. The courts have devised a three-part test to determine whether an article is a fixture: (1) whether it is annexed to the realty; (2) whether it is appropriate and adapted to the use or purpose of that part of the realty to which it is connected; (3) whether the party making the annexation intended to make it permanent. *Id.*, 151 S.W.3d at 26–27. The third factor—the intention of the party who made the annexation—is considered of primary importance. *Id.*, 151 S.W.3d at 27. The courts use an objective test to arrive at the annexer's intention. *Id.*, 151 S.W.3d at 27. In *Pledger v. Halvorson*, our supreme court stated:

> One of the primary factors giving rise to a finding that the affixed item is or is not a fixture has to do with the relationship of the party to the real estate. If the item being affixed is owned by the same person who owns the land, then the act of attaching the item to the realty is generally considered a sufficient basis for an objective observer to regard the item as having become part of the real estate. If, on the other hand, the owner of the item affixes it as a tenant to the property owned by the landlord, the opposite presumption generally arises. The likely intent of the tenant negates the fixture characterization because the tenant has probably installed the item for his own

---

[7]A bill of sale is a written agreement by which one person assigns or transfers his or her right to or interest in goods or personal chattels to another. *Black's Law Dictionary* 164 (6th ed. 1990).

enjoyment, convenience or use and will generally be regarded as intending to preserve rights in the item as personalty.

324 Ark. 302, 306, 921 S.W.2d 576, 578 (1996) (citing 5 Richard R. Powell, *The Law of Real Property* ¶ 652[1] (1987)).

We reject SJUOC's argument that the sewer improvements are not fixtures. All three fixture elements are satisfied. First, the sewer improvements are annexed to the realty in that the sewer pipes are buried in the ground, and the manholes are affixed to the land. Second, the sewer improvements are appropriate and adapted to the use of the real property to which they are connected in that they serve as an integral part of the sanitary sewer system servicing the homes located within Subdivision. These sewer improvements cannot be removed or severed from the realty without extensive, expensive efforts or injury to the real property. And third, the sewer improvements were affixed by the same entities (AJI, JC, and SBDI) who owned and developed the real property at the time; therefore, the developers' acts of attaching the improvements to the realty can be considered a sufficient basis for an objective observer to regard the improvement as having become part of the real estate. *Pledger*, 324 Ark. at 306, 921 S.W.2d at 578.

SJUOC maintains that the evidence shows the districts did not "manifest an intent" to own or control the sewer improvements. For example, the districts did not install the improvements; hire contractors to install the improvements; secure the necessary permits to operate the system; operate the system; perform or pay for any upgrades to, repairs to, general maintenance to, or replacements of the improvements; or operate, bill for, hook up a customer to, or address customer concerns about the system. This argument is not well taken. The intent

13

of the districts is irrelevant because they were not the entity that affixed the improvements to the real property.

SJUOC also argues that the uncontested proof demonstrates that the developers of the Subdivision that purchased and installed the sewer system did not intend for the pipes in the utility easement to be fixtures. For support, SJUOC cites the affidavits of Jones and Stephens wherein they state that it was the intent of AJI, JC, and SBDI to retain ownership of the sewer treatment plant and system servicing the Subdivision. This argument is flawed too. The ownership intentions of AJI, JC, and SBDI are irrelevant. The only intent that matters is whether the developers of the Subdivision intended to make the sewer improvements permanent. And because AJI, JC, and SBDI were the companies that installed the sewer improvements, there is a sufficient basis for an objective observer to regard the improvements as having become part of the real estate, i.e., permanent. Accordingly, we affirm the circuit court's finding that as a matter of law the sewer improvements are fixtures upon real property and were not conveyed to SJUOC via the bill of sale.

SJUOC further argues that its ownership interest in the sewer improvements was established as a matter of law by the November 2017 general assignment that SBDI executed in favor of SJUOC. SBDI's general assignment purportedly conveyed its right, title, and interest in sewer easements in the Subdivision to SJUOC. As an interest in land, an easement must be conveyed in the same manner as any other interest in realty. *White*, 39 Ark. App. at 88, 838 S.W.2d at 373. There is no evidence in the record demonstrating that SBDI had an easement to the sewer improvements to assign to SJUOC; therefore, a question of fact remains

14

on this issue. Accordingly, we affirm the circuit court's finding that SBDI's general assignment failed as a matter of law to convey title to the sewer easement to SJUOC.[8]

After finding the districts own the sewer improvements that service the Subdivision, the court then found that the districts are vested with statutory authority, pursuant to section 14-94-110(a) and (b), to connect the sewer improvements to another water authority. Because we are unable to determine whether the circuit court's statutory-authorization finding was contingent upon its ownership finding, we must reverse the finding that the districts are vested with statutory authority to connect the sewer improvements to other outlets.

Reversed and remanded.

KLAPPENBACH and BROWN, JJ., agree.

*Barber Law Firm, PLLC*, by: *Mark W. Hodge*, for appellant.

*Rose Law Firm, a Professional Association*, by: *Peter G. Kumpe* and *Russell P. Bailey*, for appellees.

---

[8]The record reflects that AJI, JC, and SBDI conveyed water-line easements in the Subdivision to the Arkansas Waterworks and Sanitary Public Facilities Board, an Arkansas Public Facilities Board, created by Ordinance #87-29 of the Saline County Quorum Court on September 24, 1987, doing business as Woodland Hills ("WH") in 2004 (Phase 1), 2005 (Phase 2), 2011 (Phase 3), 2006 (Phase 4), and 2011 (Phases 5–7). Assuming the water lines and sewer lines are the same and WH had easements to the sewer improvements, there is nothing in the record showing that WH conveyed the sewer-improvement easements to SBDI so that it could assign them to SJUOC. There is a statement in Stephens's affidavit that WH's sewer plant was at full capacity and could not accept the sewer outflow from the Subdivision, so the Stephens Companies retained all ownership of the sewer treatment and the related system, but there is no evidence in the record to establish that WH conveyed its easements back to AJI, JC, or SBDI.